## *Ex parte* P. M. SULLIVAN.

No. A-2182. Opinion Filed February 19, 1914.

(138 Pac. 815.)

1. CONTEMPT—Constitutional Law—Due Process. Under that clause of section 25 of the Bill of Rights, providing, "In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given," an opportunity to be heard before a penalty or punishment is imposed for contempt is an indispensable essential to the administration of due process of law as contemplated by the constitutional inhibition that "No person shall be deprived of life, liberty, or property, without due process of law." Section 7, Bill of Rights.

2. HABEAS CORPUS—Right to Remedy—Abrogation. Section 10 of the Bill of Rights provides: "The privilege of the writ of habeas corpus shall never be suspended by the authorities of this state." The writ of habeas corpus is an ancient prerogative writ. It is a writ of right, granted to inquire into all cases of illegal imprisonment. The writ cannot be abrogated, or its efficiency impaired by legislative action. And under the constitutional guaranty the cases within the relief afforded by the writ at common law cannot be placed beyond its reach and remedial action by statute.

3. SAME—Scope of Inquiry—Jurisdiction. The provisions of the habeas corpus act (section 4893, Rev. Laws 1910), which provides: "No court or judge shall inquire into the legality of any judgment

or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following:  *   *   *   Second. Upon any process issued on any final judgment of a court of competent jurisdiction; or third. For any contempt of any court, officer or body having authority to commit *   *   *''—only apply when the court has jurisdiction to render the particular judgment. A court of competent jurisdiction is one having power and authority of law at the time of acting to do the particular act. Jurisdiction of the person of the prisoner, and of the subject matter, is not alone conclusive, but the jurisdiction of the court to render the particular judgment is a proper subject of inquiry. If there was no legal power to render the judgment, or issue the process, there was no court of competent jurisdiction, and consequently no judgment or process. All is coram non judice, and void.

4.    SAME—Grounds—Unlawful Imprisonment. When a person is held in custody under a void order of commitment, or is imprisoned without due process of law under the sentence of any court of the state, it is not only within the authority of this court, but it is its duty upon habeas corpus, to inquire into the illegality of the commitment when the matter is properly brought before it by petition, and if it be adjudged that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody in order to preserve the constitutional right of all persons not to be deprived of liberty without due process of law.

5.    CONSTITUTIONAL LAW—''Due Process of Law''—''Law of the Land.'' The phrase ''due process of law'' as used in Const. Bill of Rights, sec. 7, providing that ''no person shall be deprived of life, liberty, or property without due process of law,'' is synonymous with the phrase ''law of the land'' as found in Magna Charta (citing Words and Phrases, vol. 3, p. 2232. See, also, volume 5, p. 4025; vol. 8, pp. 7701, 7702.)

Application for writ of *habeas corpus* by P. M. Sullivan. Petitioner discharged.

*P. M. Sullivan, in pro. per.*

*C. J. Davenport,* Asst. Atty. Gen., for respondent.

DOYLE, J. Upon petition to this court for a writ of *habeas corpus,* filed for the purpose of setting at liberty P. M. Sullivan, a writ was granted, returnable before this court. February 3, 1914.

It is averred in the petition that petitioner "is now and has been since January 28, 1914, illegally, unlawfully, and unconstitutionally restrained of his liberty and confined in the county

jail of Oklahoma county by M. C. Binion, the sheriff of said county."

The petition sets out with particularity proceedings in the Supreme Court of Oklahoma in case No. 5304, entitled *Robert H. Hirsch and Thomas E. Kirby, Plaintiffs, v. P. M. Sullivan et al., Defendants,* 40 Okla. 220, 139 Pac. 313. It is also averred that petitioner—

"Is so confined upon an order of commitment for an alleged direct contempt of court, made by a special Supreme Court of said state on the 28th day of January, 1914, wherein affiant is charged with contempt of said court, by filing in the clerk's office an exhibit marked 'Z' in support of a motion made by him to modify the original judgment of this special court made on December 30, 1913. That on said 28th inst. said motion to modify, with a motion to tax costs made by the same party, were both called for hearing by Judge Loofbourrow acting as Chief Judge of said special court, and thereupon affiant came and said that the motion to tax costs was filed first, and he supposed that would be first heard, without any answer or reply to that, Judge Loofbourrow asked affiant if he had filed Exhibit Z with the clerk of said court, and affiant replied he had filed an exhibit so marked, and the judge proceeded and said, in substance, that said exhibit was slanderous and scurrilous matter, and affiant was guilty of a direct contempt of court by filing said exhibit, and that it was ordered by the court that affiant be committed to the custody of the sheriff of this county and confined in the county jail for a period of six months for such contempt. That affiant requested to be heard before committed, to which the court made no reply, but again ordered the sheriff to take him, affiant, into custody, which he did, and has been in custody ever since upon said proceedings as above. That affiant was not charged with contempt of court in any manner except as stated, and he was not given or afforded any opportunity to be heard at any time or manner before he was charged, committed, or punished as aforesaid, which conviction and punishment is illegal and unlawful and in direct violation of article 2, sec. 25, of the Constitution of this state, which says: 'In no case shall a penalty or punishment be imposed for contempt until an opportunity to be heard is given.' But on the other hand, affiant was deprived of said constitutional right to be heard before punishment is inflicted."

It is further averred:

"That he never in person offered in open court, in support of his said motion, that said written argument; and he further says that he never offered any arguments, written or oral, in support of said motion, and was not given any chance or opportunity to present or argue said motion, and that after affiant was adjudged guilty of contempt of court, as aforesaid, Judge Loofbourrow said the motion to modify judgment was overruled, and that was all there was done or said about said motion, in any manner in said court, and that said motion was overruled without presentation or argument, or looking at it or reading it in court, and affiant never saw said motion or exhibit after they were filed as aforesaid; and if they were ever offered or considered on said motion, affiant does not know it. Affiant further says that there are many facts alleged in said exhibits, and he claims his right to a jury trial before he is convicted and punished for contempt of court therefor; that the truth is always a defense in all actions and proceedings, and arbitrarily convicting and adjudging him guilty of contempt of court without first hearing him is not due process of law, and denies to him the right of self-defense, which is unlawful, unconstitutional, and inhumane; that there is no probable cause for affiant's confinement for contempt of court, and he desires to use evidence on the hearing herein."

The petition was verified by affidavit.

Attached to respondent's return to the writ is a certified copy of the commitment on which petitioner is held, which, omitting the scandalous and scurrilous recitals of Exhibit Z, reads as follows:

"COMMITMENT.

"The State of Oklahoma to the Sheriff of the County of Oklahoma—Greeting:

"Whereas P. M. Sullivan, was on the 28th day of January, A. D. 1914, present in person before the Supreme Court of the state of Oklahoma and in the presence of R. H. Loofbourrow. acting Chief Justice, and one of the regular Justices of the Supreme Court, and George S. Ramsey, H. L. Fogg, and J. G. Ralls, Special Justices, said court being then in session for the purpose of hearing a motion filed by said P. M. Sullivan in cause No. 5304 in said court, and on the 26th day of January, 1914, said Sullivan having filed a certain instrument as follows in said cause: 'In the Supreme Court of Oklahoma. Robert

H. Hirsch and Thomas E. Kirby, Plaintiffs, v. P. M. Sullivan *et al.*, Defendants. Case Number 5304. Exhibit of Defendant Sullivan, Marked Ex. Z. In support of motion to modify judgment.' Said Exhibit Z contained numerous statements that are directly contemptuous of this court, scurrilous, false, and inserted for the purpose of reflecting, not only on the members of this court, but on the court as such, and that among other contemptuous allegations appear in said Exhibit Z the following. * * * And said Sullivan being asked in open court by the presiding Justice if he had filed with the clerk of this court Exhibit Z replied that he had, and, further stated in open court that the statements contained in said Exhibit Z were true. And the said act having been committed in the presence of said court, the said court did thereupon find and adjudge that he, the said P. M. Sullivan, was and is guilty of direct contempt of said court, and did therefore order that he be punished for said contempt by imprisonment in the county jail of Oklahoma county, state of Oklahoma, for a period of six months and directed the marshal of said court to deliver said Sullivan to the sheriff of Oklahoma county, state of Oklahoma, and said sheriff commit said P. M. Sullivan to the county jail of Oklahoma county, Okla., for a period of six months. You are therefore commanded to receive the said P. M. Sullivan, and him safely keep in the common jail of said county for the term of six months from the time he is delivered to you, unless he shall be sooner discharged according to law.

"Witness my hand and the seal of the Supreme Court of the State of Oklahoma this 28th day of January, A. D. 1914. W. H. L. Campbell, Clerk of the Supreme Court of the State of Oklahoma, by Reuel Haskell, Jr., Assistant. [Seal.]"

Upon the hearing the petitioner, sworn as a witness in his own behalf, testified, in substance, that he appeared in person as a party in case No. 5304, and Presiding Judge Loofbourrow asked him if he filed Exhibit Z in said cause, and he answered that he did, and the presiding judge said that said exhibit was scandalous and slanderous, and was a direct contempt of court, and ordered that petitioner be taken in custody by the marshal, and by him delivered to Sheriff Binion to be confined in the county jail for a period of six months; that petitioner demanded a right to be heard before he was convicted, to which the court made no reply; that the presiding judge ordered his commitment with-

out consulting his Associate Justices; that Sheriff Binion immediately took him into his custody, and he has since so remained.

On petitioner's request, Mr. Reuel Haskell, assistant clerk of the Supreme Court, was sworn, and testified that he was present when petitioner was ordered committed. His testimony corroborates that of petitioner.

On petitioner's request, the respondent, M. C. Binion, sheriff, was sworn, and testified that the marshal of the Supreme Court sent for him on the 28th day of January, and he was present in court when the order adjudging petitioner guilty of contempt and committing him to custody of respondent was made. His testimony corroborates that of petitioner.

Annexed to the petition is the affidavit of Floyd Wheeler, counsel for one of the parties in said case No. 5304, wherein affiant states that:

"When the motion to tax the costs against the defendant, P. M. Sullivan, was called the presiding judge asked Sullivan if he had filed an exhibit marked 'Z' with the clerk. Sullivan replied that he had. Thereupon the presiding judge stated that it was the judgment of the court that said exhibit was scandalous and slanderous, and was a direct contempt of court, and it was ordered that Sullivan be taken in custody by the marshal, and by him delivered to the sheriff, and be confined in the county jail for a period of six months. Then Sullivan said that he wanted to be heard before he was convicted, to which the court made no reply. The sheriff then took Sullivan in custody. The court proceeded and overruled the motion to modify the judgment, taxed the costs against the defendant, Sullivan, and then took a recess."

In the proceedings referred to petitioner was appearing in his own proper person, in his own behalf, and so appearing in this case, he has filed a brief, in which he contends that his commitment and imprisonment is illegal, invalid, and void, for want of due process of law, as secured to him by the Constitution of this state (section 25, art. 2) and the Constitution of the United States, as shown by the undisputed evidence in this, to wit: That he was deprived of an opportunity to be heard before commitment and imprisonment, which right to be heard before be-

ing condemned is the law of the land, and he demanded such right to be heard and was denied it by the court. That he was not cited or notified that he was charged with contempt of court until he was adjudged guilty and sentenced to six months' imprisonment in the county jail therefor by Presiding Judge Loofbourrow, which deprived defendant of the right to be heard before being condemned, and constitutes an entire lack of due process of law under the state and the United States Constitutions, and the judicial procedure of all civilized countries; that from the evidence and the facts surrounding the case, as they appeared upon the hearing, the conclusion is that the defendant was tried and condemned and adjudged guilty before the court convened and sentenced him, by the court sending for the sheriff to come into court and take him to jail, and by the presiding judge asking him a single question only, "if he filed Exhibit Z," and then, without notifying him that he was charged with being guilty of contempt of court, sentenced him to six months' imprisonment, and in then ordering him into the custody of the sheriff without any conference or consultation with the other judges of the court.

The petition is based upon the clause of section 25 of the Bill of Rights, which is in these words: "In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given"—and section 7 of the Bill of Rights, which reads: "No person shall be deprived of life, liberty, or property, without due process of law."

The principle that no person shall be deprived of life, liberty or property, except by due process of law, is older than written constitutions. The phrase "due process of law," as used in the Bill of Rights, is synonymous with the phrase "law of the land," as found in Magna Charta. A definition of the meaning of the words "law of the land" and "due process of law" which has received the sanction of the courts (see Words and Phrases, vol. 3, 2232) is Mr. Webster's familiar definition:

"By the 'law of the land' is clearly intended the general law, which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. It means that every citi-

zen shall hold his life, liberty, and property under the protection of the general rules which govern society."

Says Judge Cooley:

"Due process of law, in each particular case, means an exertion of the power of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs."

The right to punish for contempt is inherent in every constitutional court having common-law powers. Without entering into a discussion of the reasons underlying the right, we will only say that its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and decrees of the courts, and consequently to the due administration of justice; and in a·measure upon its proper and prudent exercise·depend the respect and dignity and efficiency of courts of justice. Contempts of court· are punished as offenses against the administration of justice, and not as personal affronts to those who· exercise judicial functions, and a person imprisoned as punishment for criminal contempt, properly so called, is imprisoned in execution under a sentence for crime. Under the principles and rules of the common law, the. right to· punish for contempt in a summary manner is recognized, and the power to punish, by fine or imprisonment, at the discretion of the court, contempts against the dignity and authority of the court, committed in the presence of the court, *instanter*, without notice or hearing, is· unquestioned. In such cases the court acts upon view; there is no presentation, no plea, nor issue upon which there can be a trial. *Ex parte Savin*, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150; *Ex parte Clark*, 208 Mo. 121, 106 S. W. 990, 15 L. R. A. (N. S.) 389.

And it is held that such proceeding recognized as due process of law under the common law must be considered as "Due process of law" within the meaning of the constitutional provision. However, none of the states in which those decisions were made seem to have in their Constitutions a provision limiting the power of the courts to inflict summary punishment for con-

tempt, and under this constitutional guaranty it is the unquestionable right of a contemner to have an opportunity to be heard before punishment is imposed. We have been unable to find that this significant provision appears in any other state Constitution.

Another rule of common law upon which there is some conflict of authority is that the Legislature has no power, in the absence of constitutional provisions, to abridge, impair, limit, or regulate the inherent power of the courts to punish for contempt, and this was the rule adhered to by the Supreme Court of Oklahoma Territory. See *Burke v. Territory,* 2 Okla. 499, 37 Pac. 829, and *Smith v. Speed,* 11 Okla. 95, 66 Pac. 511, 55 L. R. A. 402. In all free governments absolute power rests somewhere. In this state it is neither lodged with the Legislative, nor the executive, nor the judicial branch of government, nor with all combined, but sovereignty rests with the people, and in their sovereign capacity they have placed certain constitutional limitations upon the power of the courts in proceedings for contempt.

Section 25 of the Bill of Rights provides:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint made or rendered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

Upon the facts stated in the commitment, petitioner was clearly guilty of criminal contempt. It goes without saying that when an attorney or party files a paper, reflecting upon the integrity, fairness, and impartiality of the court, except where the statutes make it grounds for disqualifying the judge, or obtaining a new trial on account of alleged prejudice or bias, or for the purpose of change of venue, he thereby makes himself guilty of a criminal contempt. However, under that clause of section

25 of the Bill of Rights, already quoted, before a person can be punished for a contempt of any kind, he must be given an opportunity to be heard; and any judgment of conviction rendered without a hearing, or without an opportunity to be heard, is void, and such a deprivation of his constitutional right to be heard is a denial of due process of law.

In the case of *Hovey v. Elliott,* 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215, the court had stricken out the answer of a party because of his contempt of an order requiring him to pay money into court, and rendered judgment against him *pro confesso*; it was held that the act was beyond the power of the court, for the reason that it deprived the party of the right to be heard in his defense, and that the judgment so entered against him was void, even as against collateral attack. Among other things, it is said:

"Can it be doubted that due process of law signifies a right to be heard in one's defense? If the legislative department of the government were to enact a statute conferring the right to condemn the citizen without any opportunity whatever of being heard, would it be pretended that such an enactment would not be violative of the Constitution? If this be true, as it undoubtedly is, how can it be said that the judicial department, the source and fountain of justice itself, has yet the authority to render lawful that which, if done under express legislative sanction, would be violative of the Constitution? If such power obtains, then the judicial power of the government sitting to uphold and enforce the Constitution is the only one possessing a power to disregard it. If such authority exists, then, in consequence of their establishment to compel obedience to law and to enforce justice, courts possess the right to inflict the very wrongs which they were created to prevent."

And, as showing that it is not sufficient that the court shall go through the mere form of citing a party to appear upon the pretense of giving him a hearing while in fact denying him the right in its substance, it is there said:

"Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject-matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it

is a summons to him to appear and speak, if he has anything to say, why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be in effect to deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether. It would be like saying to a party, 'Appear and you shall be heard,' and, when he has appeared, saying, "Your appearance shall not be recognized, and you shall not be heard.' "

And, quoting from *Galpin v. Page,* 85 U. S. (18 Wall.) 350, 21 L. Ed. 959, it is said:

"It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

In the very recent case of *Ex parte Nelson,* decided by the Supreme Court of Missouri, 251 Mo. 63, 157 S. W. 794, where the petitioner was cited to appear and show cause why he should not be adjudged guilty of contempt of court for publishing a contemptuous article of and concerning the circuit court of Jackson county and one of the judges thereof, the petitioner appeared before said court and filed his answer, and by counsel demanded the right to introduce testimony, which right was denied by the court, and he was adjudged guilty of contempt. It was held that the article was contemptuous of the court and the judge presiding therein, and further held that petitioner's conviction for contempt of court without a hearing was a denial of due process of law. The opinion by Mr. Justice Woodson is clear and logical, and shows great research. Quoting therefrom, in part he said:

"Was the petitioner given a hearing within the meaning of the state and federal Constitutions before he was condemned, or was he in fact tried the night before, with a contingent right on his part to have the findings and judgment modified or set aside in case he should convince the court that the findings and judgment were upon the facts improper, which, as we have previously shown by a quotation, from said written opinion of the

court, the court was satisfied the petitioner would not be able to make? This conduct of the court was a plain violation of the following fundamental rule of right, viz.: 'He that answereth a matter before he heareth it, it is folly and shame unto him.' Proverbs, 18, 13. 'That no person shall be deprived of life, liberty, or property without due process of law.' Section 30 of article 2 of the Constitution of Missouri 1875. 'No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law.' Section 1 of amendment 14 of the Constitution of the United States. These constitutional provisions are but different modes of expressing the fundamental right of a man to a fair and impartial trial, be he innocent or guilty. This right was announced by Solomon centuries before the Christian era. All of those wise provisions of fundamental law are grounded upon right, and right is not grounded upon them. They are but the human guaranties that the God-given right, to all mankind, to life, liberty, and property, shall not be taken from him without due process of law. This is the best form of government given to man upon earth; but, thank God, we are promised a better one in the world to come, where every one, great and small, shall be judged out of the book of life, 'according to their works.' Revelations, 20, 12. Returning to earth: The authorities are uniform in holding that these constitutional provisions are applicable to every form of procedure where the life, liberty, or property of a person is sought to be taken from him, whether it be by the trial or appellate court, sitting alone or aided by a jury, upon information, indictment, or citation or appeal, charging him with a misdemeanor, felony, contempt of court, inferior or superior, or with any other violation of the law, where a judgment or conviction is asked taking from him his life, liberty, or property. Seemingly the friends and counsel of the court do not seriously insist that the petitioner was actually tried and heard in his own defense before he was condemned and deprived of his liberty within the meaning of said constitutional provisions, but insist that, notwithstanding that fact, he was not deprived thereby of any of his legal rights, because, as they contend, the record shows he was unquestionably guilty of contempt, and if he had been given a timely hearing, the result would have been the same. That may be true, yet counsel overlook the larger fact, namely, that even the most guilty are entitled to a fair and impartial trial before they can be legally pronounced guilty. A person may be guilty of the most atrocious

crime, which may be known to hundreds, and he may have proclaimed his guilt from the housetops, nevertheless he must be accorded the same fair and impartial trial, according to the forms of law, that would be accorded to a king, prince, or potentate."

Professor McGehee, in his work on Due Process of Law, says at page 73:

"Justice requires that a hearing and an opportunity to present defenses must precede condemnation. Around this ideal of justice has grown up the constitutional conception of 'the law of the land,' or due process of law, but the ideal was not confined to one system of jurisprudence, and was common to thoughtful men everywhere."

It is submitted by the Assistant Attorney General appearing for respondent that where the imprisonment is under the judgment of a court of competent jurisdiction, such judgment cannot be attacked collaterally, or the proceedings inquired into in *habeas corpus* proceedings; that this court is precluded from inquiring into the facts alleged in the petition by the provisions of section 4893, Rev. Laws 1910, which read:·

"No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following: * * * Second: Upon any process issued on any final judgment of a court of competent jurisdiction; or third: For any contempt of any court, officer or body having authority to commit. * * * "

Section 10 of the Bill of Rights provides:

"The privilege of the writ of *habeas corpus* shall never be suspended by the authorities of this state."

It is well settled, by numerous decisions of this and other courts, that the writ of *habeas corpus* is a writ of right, and cannot be abrogated or its efficiency impaired by legislative action, and under the constitutional guaranty, the cases within the relief afforded by the writ at common law cannot be placed beyond its reach and remedial action by statute. A court of competent jurisdiction is one having power and authority of law at the time of acting to do the particular act, and jurisdiction of the person and of the subject-matter is not alone conclusive, but the jurisdiction of the court to render the particular

judgment or issue the process is a proper subject of inquiry; and the proceedings of the committing court will be examined so far as necessary to determine the question of jurisdiction. If there was no legal power to render the judgment, or issue the process, there was no court of competent jurisdiction, and consequently no judgment or process. All is *coram non judice*, and void. See *Ex parte Patswald*, 5 Okla. 789, 50 Pac. 139, *Ex parte Justus*, 3 Okla. Cr. 111, 104 Pac. 933, 25 L. R. A. (N. S.) 483, and *Ex parte Mingle*, 2 Okla. Cr. 708, 104 Pac. 68.

This court will take judicial notice that P. M. Sullivan, the petitioner, was by the Supreme Court of this state constituted of Special Justices, appointed by the Governor (the elected Justices of the Supreme Court having disqualified), disbarred from the practice of law (see *Williams v. Sullivan*, 35 Okla. 745, 131 Pac. 703), and that the elected Justices of the Supreme Court disqualified in the case wherein this contempt proceeding arose, and that said court was constituted of Special Justices, sitting with Justice Loofbourrow, appointed for the determination of that cause alone, and that said Special Justices had ceased to act as such before the petition herein was filed, and that the elected Justices of the Supreme Court have disqualified in all cases wherein P. M. Sullivan, petitioner, is a party.

When a person is held under a commitment for contempt of court, such person may, by *habeas corpus*, secure a determination as to the jurisdiction of the court in ordering the commitment. It matters not what the general powers and jurisdiction of the court may be, if it acts without authority in the particular case, its judgment and order is a mere nullity. And if it be adjudged that the committing court had no jurisdiction, and that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody, in order to preserve the constitutional right of all persons not to be deprived of liberty without due process of law. That this court has no authority to review the judgments of the Supreme Court of this state is beyond question; but it is equally well settled that when a person is held in custody under a void order of commitment,

or is imprisoned without due process of law under the sentence of any court of the state, it is not only within the authority of this court, but it is its duty, upon *habeas corpus* to inquire into the illegality of commitment when the matter is properly brought before it by petition, and, if found to be as averred, that such imprisonment is illegal, because the committing court had no jurisdiction, then to discharge the prisoner.

The privilege of *habeas corpus* cannot be denied as a matter of comity between co-ordinate courts. It is not the province of this court in this case to inquire into any other than the single question, Was the petitioner adjudged guilty of, and committed for contempt, without an opportunity to be heard? Otherwise stated, Was the petitioner deprived of his liberty without due process of law? The uncontradicted evidence of respondent and the clerk of the court, and that of petitioner, is that he demanded of and was denied an opportunity to be heard by the court, and it will be observed, from the recitals in the order of commitment, that it does not recite that an opportunity to be heard was given before petitioner was adjudged guilty and committed for contempt; and the fact that no opportunity to be heard was given will be inferred in the absence of a recital to that effect.

That clause of section 25 of the Bill of Rights in question does not prescribe any form nor require any characterization of the act charged as a contempt in order to confer jurisdiction, but it does require that an opportunity to be heard be given before a penalty or punishment is imposed for contempt. In the absence of some requirement of the statute prescribing the manner or mode of hearing, in order to confer jurisdiction on the court to punish for contempts, committed in the presence of the court, we think that it would be sufficient if the contemner be arraigned and asked whether he has any legal cause to show why he should not be adjudged guilty of contempt of court.

It is our opinion that an opportunity to be heard before penalty or punishment is imposed for contempt is an indispensable essential to the administration of due process of law as contemplated by the constitutional inhibition. In this case the court

gave petitioner no opportunity to be heard. It logically follows as a plain legal deduction that petitioner is imprisoned without due process of law. Entertaining these views, we are of the opinion that the petitioner is entitled to his discharge; and it is so ordered.

FURMAN, J., absent and not participating.

ARMSTRONG, P. J. (concurring). It is with great reluctance, and after much research and careful pondering, that I am forced to concur in the doctrine announced by my Associate, Judge Doyle, in the foregoing opinion, to the effect that no court in Oklahoma has the power to punish summarily for direct contempt until a hearing has first been allowed the offending party. The provision of the Constitution upon which the relief sought in this case must rest, and upon it alone in my judgment, is as follows:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or rendered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

The first clause of this provision clothes the Legislature with power to enact laws defining, regulating the procedure, and limiting the punishment in all classes of contempt. The second clause, together with section 2279, Rev. Laws 1910, prohibits any court from imposing punishment upon any offender for any indirect contempt until he has had a jury trial, if he so demands. The last clause specifically prohibits any court from imposing punishment of any character upon any contemptuous offender, either direct or indirect, until he has been given an opportunity to be heard. The wisdom of this provision, or any clause thereof, is not for this court to determine. It is a matter of common knowledge that many of the most able lawyers of Oklahoma and strong men from other walks of life composed the convention which

wrote this provision into our Constitution, and it was ratified by an overwhelming vote of the sovereign citizenship. The language is too plain to admit of judicial construction or interpretation that would allow any other conclusion than that expressed in the opinion. There has been no enactment by the Legislature since statehood defining contempts, providing procedure, or limiting punishments. The codifiers of the Revised Laws eliminated all such provisions from former enactments in the Revision which was ratified by the Legislature. There can be no doubt but that the legislative assembly has the power under this section of the Constitution to enact a law prescribing a nominal fine for all classes of contempt, the most flagrant, as well as the most indirect, should it so desire, and by such enactment the court would be bound. Were it not for this provision, however, there is ample authority for the position that the power of the courts to inflict punishment summarily in cases of direct and flagrant contempt could not be restricted by unreasonable limitations. That our judiciary is elected by popular vote and for short terms probably accounts for the fact that no action has been taken by the Legislature in this connection, together with the general confidence the people as a whole have in the courts. I know of no other identical constitutional provision, and considerable research has failed to disclose any of similar import.

In my judgment the relief prayed for and granted by the opinion in this case must stand wholly on the provision of the Constitution, *supra,* and upon no other legal grounds, organic or otherwise. That the contempt in this case was most flagrant, and merits severe punishment, cannot be doubted by any law-abiding citizen. The only question before us is: Was the punishment imposed in the manner provided by law? I am impelled to say that in my judgment it was not.

It appears that in the absence of legislation no punishment of any character can be imposed for contempt of any class until a hearing has been allowed. Just what this hearing should be is rather indefinite. I am of opinion, however, that arraignment before the bar of the court and the offering by the court of an opportunity to the offender to give legal cause, if any, why judg-

ment should not be summarily pronounced, and the hearing by the court of such reasons as may be legally offered, if any, would warrant summary judgment, either for or against the offender as in the judgment of the court is just and proper. In view of the fact that the punishment in the case at bar was inflicted by a court of co-ordinate jurisdiction, it is the opinion of the writer that the petitioner should be required to raise these questions in that court by proper proceeding, and secure a determination of them there. The fact that this remedy was open, however, would probably not be sufficient warrant for this court declining, on *habeas corpus,* to give its judgment on the question raised.

For these reasons I concur in the conclusion reached by my Associate, Judge Doyle, that the petitioner is entitled to be released from imprisonment under the commitment in question, but in my opinion he should be held to appear before the Supreme Court to await such further action as that body may deem proper.