## A. L. EMERY v. STATE.

No. A-3864.   Opinion Filed Jan. 15, 1925.
(232 Pac. 128.)

(Syllabus.)

1.  **Contempt—"Contempt of Court" Defined.** "Contempt of court" signifies, not only a willful disregard or disobedience of its orders, but such conduct as tends to bring the authority of the court and the administration of law into disrepute, or in some other manner to impede the due administration of justice.

2.  **Same—Constitution and Statutes Controlling.** Contempts of court in this state are governed by constitutional and statutory provisions, and not by common-law rules.

3.  **Same—"Indirect Contempt" Defined.** An "indirect contempt" of court consists of an act having a tendency to obstruct and embarrass or prevent the due administration of justice, done at a distance, and not "during the session of the court and in its immediate view and presence."

4.  **Contempt—Statutory Procedure to Be Followed in Inflicting Punishment.** The courts in inflicting punishment for contempt must observe the modes of procedure prescribed by the statute.

5.  **Same—Procedure in Indirect Contempt—Right to Jury Trial.** Under Const. art. § 25, and Comp. Stats. 1921, § 1699, a proceeding to punish for indirect contempt must be instituted by affidavit, complaint, or information, setting forth the facts or by a statement of them in writing by the court or judge thereof. The accused must then be notified in writing of the accusation, and have a reasonable time for defense, and upon demand shall have a trial by jury.

6.  **Jury—Conviction for Indirect Contempt Void Where Jury Trial Refused.** Where a person charged with indirect contempt has demanded a jury trial, and such demand has been refused by the trial court, any order adjudging the accused guilty of contempt, or attempting to commit him to jail, or which imposes any other penalty, is void.

Appeal from Superior Court, Muskogee County; Guy F. Nelson, Judge.

A. L. Emery was found guilty of contempt of court, and he appeals.   Reversed.

P. J. Carey, R. E. Simpson, C. B. Kendrick, and A. L. Emery, for appellant.

DOYLE, J.  In this case appellant was adjudged guilty of contempt in the superior court for the county of Muskogee.  He was sentenced to be confined in the county jail for a period of 24 hours, and to pay a fine of $100 and the costs of the proceeding.  He has brought the proceeding to this court for a review upon a petition in error and case-made.  The errors assigned question the jurisdiction of the court or the judge thereof to render the judgment appealed from.

The record shows that the court caused an attachment to issue against A. L. Emery to answer for contempt committed by him by writing, and mailing to the court "an insulting and threatening letter" in regard to the actions of the court in a cause therein pending.

On appellant being brought before the court, the following proceedings were had:

"By the Court: Mr. Emery, in the case of P. E. Hickman et al. v. Betty Grayson et al., you appeared here last Friday, the 9th, as attorney for Betty Grayson and other defendants to argue that case, and it was argued at some length, after you returned to your home in Okmulgee, and on the 11th you wrote a letter, addressed to myself as judge of this court, and mailed it on the 12th, and it was delivered to me in due course of the mail.  The letter reads as follows:  (Reads the letter.)  Have you anything to say or reason to offer why I should not hold you in contempt of this court for writing and sending that letter?  If you have, I will now hear you.

"By Mr. Simpson: If the court please, I represent Mr. Emery.  Before any further proceedings are had, I would like to know if there has been any information prepared or complaint filed in this case.

"By the Court: There is not.  The court of its own motion issued an attachment for him, and he was brought here under that attachment."

Counsel for appellant thereupon moved to dismiss the proceeding, on the ground that the court was without jurisdiction, in that if the defendant is in contempt of court, the statement of the court shows, the act having been done out of the presence and outside the jurisdiction of the court, it is therefore an indirect contempt and not a direct contempt of court, and the court is not proceeding in the manner prescribed by law. Which motion was overruled. The court stating that its ruling was supported by the cases of Burke v. Territory, 2 Okla. 499, 37 P. 829, and In re Pryor, 18 Kan. 72, 26 Am. Rep. 747.

Thereupon counsel for appellant demanded a trial by jury, which was overruled.

"By Mr. Emery: May it please the court, your honor asked me a few minutes ago if I had any reason why I should not be held in contempt of this court. I wrote the letter; it was directed to your honor personally; it was the expression of the very warmest terms of friendship; I felt I had been wronged; I did not go around and tell it around; I told it directly to your honor. There was no wrongful intent, nor have I intended to be disrespectful to your honor, either in court or out of court. There is no reason why I should be.

"By the Court: Now, Mr. Emery, the writing of that letter in itself is a contempt. I will assume the burden now. At the close of that I will hear you further, if you have anything further to say."

Thereupon the court called and examined several witnesses, and at the close of the testimony pronounced the judgment and sentence appealed from.

It is manifest from the record in this case showing that no affidavit, complaint, or other accusation in writing was ever filed or served upon appellant, that the court was without jurisdiction to proceed to and render the judgment appealed from.

Without entering into a discussion of the reasons un-

derlying the power of a court to enforce due respect for its authority, and to protect itself against any unfounded and scurrilous accusation made against it which tends to impede, embarrass, or obstruct the due administration of justice, we will only say that, while the power of a court to punish for contempt, though undoubted, is in its nature arbitrary, its exercise is not to be upheld except under the circumstances and in the manner prescribed by law.

It is essential to the validity of proceedings in contempt, subjecting a party to a fine and imprisonment, that they show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized. Cress v. State, 14 Okla. Cr. 521, 173 P. 854.

Generally speaking, contempts are classified as direct or indirect, and as criminal or civil. A direct contempt being such as is offered in the presence of the court while sitting judicially, and an indirect or, as it is sometimes called, a constructive contempt being such as tends by its operation, though not committed in court, to obstruct and embarrass or prevent the due administration of justice. Contempts of court in this state are governed by constitutional provisions and by the statutes, and not by common-law rules.

Our state Constitution provides:

"The Legislature shall pass laws defining contempts and regulating the proceedings and punishment in matters of contempt: Provided, that any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused. In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given." Bill of Rights. § 25.

To effectuate this provision the Legislature enacted the following provisions:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolvent behavior committed during the session of the court and in its immediate view and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of wilful disobedience of any process or order lawfull issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court." Section 1697, Comp. Stats. 1921.

"Punishment for contempt shall be by fine or imprisonment, or both, at the discretion of the court." Section 1698.

"In all cases of indirect contempt the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and the party so charged shall, upon demand, have a trial by jury." Section 1699.

"Whenever a person shall be imprisoned for contempt the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court." Section 1700.

In cases of direct contempt under the constitutional and statutory provisions, the contemnor being present in court, neither a formal charge against him in writing nor process is required. Only an opportunity to be heard is given. The court in its discretion renders judgment imposing such punishment as it may deem proper within the limits prescribed by the statute. No record is made other than the judgment. In this, as the statute provides, the substance of the offense shall be set forth and made a matter of record in the court.

A proceeding for an indirect contempt, as provided in section 1699, must be instituted by affidavit, complaint, or information, setting forth the facts constituting the al-

leged contempt, or by a statement of them in writing by the court, judge thereof, or other judicial officer. The alleged contemnor must then be notified in writing of the accusation and have a reasonable time for defense and upon demand shall have a trial by jury, which must be conducted with all the incidents of an ordinary criminal case. If the contemnor is found guilty, the court pronounces judgment as in ordinary criminal cases, sentencing him to pay a fine or to undergo imprisonment or both, at the discretion of the court.

The contempt outlined in the judgment in this case is plainly an indirect contempt under the forgoing statutory definitions, and the act upon which the contempt proceedings are predicated was not made to appear by any accusation in writing as required by the statute, and on due accusation he was entitled by the statute to notice of the accusation and reasonable time to make his defense, and upon demand he was entitled to have a trial by jury. The court therefore obtained no jurisdiction to either order Mr. Emery to show cause why an attachment should not issue against him, or to cause him to be arrested for the alleged misconduct.

In a proceeding for indirect contempt, the accusation, the process, the answer of the contemnor, and the evidence, when properly preserved, together with the judgment, constitute the record. In Blanchard v. Bryan, 83 Okla. 33, 200 P. 444, it was held that:

"When a person is charged with an indirect contempt, and has demanded a jury trial, and such demand has been refused by the trial court, any order made by such trial court adjudging the accused guilty of contempt, or attempting to commit him to jail, or which imposes any other penalty, is void."

The principle that "no person shall be deprived of life, liberty, or property without due process of law," is older than written constitutions. The phrase, "due process of

law," as used in the Bill of Rights, § 7, is synonymous with the phrase, "law of the land," as found in Magna Carta. A citizen may not be imprisoned, or subjected to the payment of a fine, except in the mode pointed out by the law. Sullivan v. State, 10 Okla. Cr. 465, 138 P. 815, Ann. Cas. 1916A, 719.

In a proceeding for contempt of court, if the contemnor is found guilty, the punishment imposed is a sentence in a criminal case. Such adjudication is a conviction, and the commitment in consequence thereof is in execution of sentence for a criminal offense. Flathers v. State, 7 Okla. Cr. 668, 125 P. 902; Burnett v. State, 8 Okla. Cr. 639, 129 P. 1110, 47 L. R. A. (N. S.) 1175. It follows that proceedings for the punishment of contempt should generally conform as nearly as possible to proceedings in criminal cases.

Without expressing any opinion as to whether or not Mr. Emery was guilty of professional misconduct in sending to Judge Nelson the letter in question, we will take this occasion to say that an attorney is under special obligations to be considerate and respectful in his conduct and communications to a court or judge thereof. He is an officer of the court, and it is therefore his duty to uphold and maintain its dignity. Certain privileges attach to him by reason of such official position; as such he enjoys the high and exclusive privilege of representing litigants who seek to have their rights determined. By virtue of this privilege, he may in the trial of cases use language concerning parties, and witnesses, and all matters and things in issue which elsewhere and under other circumstances would be libelous. But with this privilege goes the corresponding obligation of constant courtesy and due respect toward the court in which the proceedings are pending. A failure to extend this courtesy and respectful treatment is a failure of duty, and it may be so gross a dereliction as to warrant the exercise of the power to punish for contempt. When a case is disposed of and the decision announced, such decis-

ion becomes public property, and as such subject to public scrutiny and investigation. In such cases the press, the public, or any individual thereof, attorney or otherwise, has the undoubted right to comment upon the decision and criticize and censure the court as they see fit, being responsible for the abuse of that right.

It has been well said that, above all others, the members of the bar have the best opportunity to become conversant with the character and efficiency of our judges. No class is less likely to abuse the privilege, as no other class has as great an interest in the preservation of an able and upright bench.

We adopt as our conclusion the words of Justice Brewer in the case of In re Pryor, supra:

"After a case is disposed of, a court or judge has no power to compel the public, or any individual thereof, attorney or otherwise, to consider his rulings correct, his conduct proper, or even his integrity free from stain, or to punish for contempt any mere criticism or animadversion thereon, no matter how severe or unjust. * * *

"We remark again, that a judge will generally and wisely pass unnoticed any mere hasty and unguarded expression of passion, or at least pass it with simply a reproof. It is so that, in every case where a judge decides for one party, he decides against another; and oftimes both parties are beforehand equally confident and sanguine. The disappointment, therefore, is great, and it is not in human nature that there should be other than bitter feeling, which often reaches to the judge as the cause of the supposed wrong. * * * A second thought will generally make a party ashamed of such outbreak, and the dignity of the court will suffer none by passing it in silence. On the other hand, a little thing which is properly unnoticed once, may by its repetition require notice and punishment. * * * So an attorney sometimes, thinking it a mark of independence, may become wont to use contemptuous, angry, or insulting expressions at every adverse ruling, until it becomes the court's clear duty to check the habit by the severe lesson of a punishment for contempt."

For the reasons stated, we are clearly of opinion that the lower court was proceeding without jurisdiction. It follows that the judgment must be reversed.

The superior court of Muskogee county having been abolished, the cause is dismissed, and the appeal bond exonerated.

MATSON, P. J., and BESSEY, J., concur.