Ex parte LEE DAWES.

No. A-5510.  Opinion Filed Sept. 29, 1925.
(239 Pac. 689.)

'Bruce L. Keenan, for petitioner.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for respondent.

DOYLE, J.   The petitioner, Lee Dawes, under the writ of habeas corpus issued herein seeks to obtain his release from the custody of the sheriff of Cherokee county.

The petitioner avers that the cause of his unlawful restraint is as follows:   That J. T. Parks, district judge for the First judicial district, at Tahlequah, Cherokee county, February 6, 1925, as said district judge, sentenced petitioner to be imprisoned and to pay fines for alleged direct contempts of court, and ordered the sheriff to take him from the room to the county jail; that, after petitioner had been removed from the courtroom, the said J. T. Parks presumed to have  filed  certain charges in writing against him, by W. W. Miller, the county attorney, each of which charged him with the commission of the crime of direct contempt of court.

It is further averred that on the said 6th day of February the only matters before the court were the contempt accusations against petitioner; that the first-mentioned charge was for an alleged statement by petitioner at a prior term of the court, and the second

charge was for his statement to the court on February 5, 1925.

A duly certified transcript of the proceedings, attached to the petition and made a part thereof, is as follows:

"The Court: The reporter will take the proceedings. This is a matter of contempt proceedings before the district court against Lee Dawes. On yesterday, the 5th of February, 1925, Lee Dawes appeared in this court when it was duly and regularly convened at the February, 1925, term of said court and during the trial of causes appeared in the courtroom and addressed remarks to the judge of this court as follows: 'That you are the one that ought to go to jail, and I will see that you go there.' Previous to this time, and during the regular term of court in September, 1924, Lee Dawes, at that time appeared before this court, and asserted, in the presence of the court and in the presence of the people who were then in court in the courtroom, and during the regular September, 1924, term of court, and when this court was regularly and duly convened, and made the remark to this court: 'You are not honest. You can't look me in the eye.' For this attitude towards the court and the language used by the said Lee Dawes constitutes and appears to be direct contempt. Lee Dawes, now being before the court, is asked what he has to say to the charge herein contained.

"Lee Dawes: Your honor, Lee Dawes is the defendant in the said cause, and asks this judge to be disqualified, as he is prejudiced towards the defendant now, and has been throughout the entire trial of all cases pending against him in said court.

"The Court: Anything further?

"Lee Dawes: No, sir.

"The Court: This case being a contempt case, it is not one to be tried or submitted to any other court under the law; and it is the sentence and judgment of this court that Lee Dawes be committed to confinement in the county jail and there remain for a period of 90 days,

and in addition thereto a fine of $500 is imposed upon him, and, if not paid, to be served out in the county jail at $1 per day, and he is placed in charge of the sheriff of Cherokee county at this time, to be thus confined and to begin his sentence at once, and it is so ordered, and the sheriff will take charge of him and confine him in the county jail.

"Lee Dawes: If I had paid you $300, everything would have been all right.

"The Court: Just a minute. Lee Dawes at this time states that, if he had paid this court $300, everything would be all right. Do you know any reason why you should not be held in contempt for this assertion and this contemptuous remark before this court at this time? For this remark before this court at this time and this contempt Lee Dawes is sentenced and ordered to be confined on the sentence in the county jail for the term of six months from the date of the expiration of the 90 days given in the previous case and fined in the sum of $250 in addition thereto; thus making three charges and offenses of contempt that have been committed by the said Lee Dawes before this court. (Lee Dawes taken into custody by sheriff and taken from courtroom.)

"The Court: The record should show, in rendering judgment in the Lee Dawes Case—it should be modified so as to show $250 fine and 30 days in jail on the September, 1924, offense of contempt; and a fine of $250 and 60 days in jail on the February 5, 1925, offense, that was yesterday, and then 6 months in jail and a fine of $500 on the offense committed to-day."

It is further averred that, after he was taken from the courtroom, and wholly without his knowledge, there now seem to have been made three charges of contempt against him, each entitled "State of Oklahoma v. Lee Dawes," and numbered 1348, 1349, and 1350, as the transcript attached hereto and made a part hereof shows.

It is further averred:

"That, for the failure of the court to punish the al-

leged direct contempts summarily at the time the court condoned and lost jurisdiction to punish on said 6th day of February for the direct contempt alleged to have been committed on the 15th day of September, 1924, and neither would the court have jurisdiction to punish on the 6th day of February for a contempt committed on the 5th day of February, unless the court noticed the contempt and summarily laid the foundation at that time for contempt proceedings."

It is further averred:

That the judgments of conviction and commitments thereon are void:

"First. Because made apparently from separate and distinct charges of a crime committed against the peace and dignity of the state of Oklahoma, without notice or knowledge of him and not in his presence, and upon which he has never had a hearing.

"Second. Because the several commitments do not state the substance of the offense required by the statute to be set forth to give them any validity."

That his detention and imprisonment is in violation of his constitutional rights, and he is deprived of his liberty without due process of law.

Respondent, J. T. Powell, sheriff of Cherokee county, interposed a general demurrer to this petition, and the same was overruled. Thereupon said sheriff made return thereto, wherein it appears that, on an information charging statutory rape, petitioner was tried and convicted, the punishment having been left to the court by the jury, and on September 15, 1924, the court sentenced the said Lee Dawes to imprisonment in the penitentiary for a term of 14 years; that an appeal from said conviction was duly perfected and is now pending in this court; that on February 5, 1925, said Lee Dawes by order of the court was placed in his custody pending an investigation involving the said Lee Dawes in hiding a witness who was the prosecutrix in another rape case

against said Lee Dawes, which case was called for trial on said day, and wherein the county attorney had filed a motion for continuance on account of the absence of said witness; that said Lee Dawes was again placed in his custody on the 6th day of February, 1925, by the judge of said district court, and that he held said Lee Dawes in custody by virtue of three judgments of the district court for contempts of court and sentencing him to terms of imprisonment in the county jail and commitments issued thereon, certified copies of the commitments being attached to the return, which, omitting title, venue, and attestation, are as follows:

"The State of Oklahoma to the Sheriff of said County, Greeting: No. 1348. Whereas on the 6th day of February, 1925, before the district judge of Cherokee county and state aforesaid, the above-named defendant, Lee Dawes, was adjudged guilty of the crime of direct contempt of said court, and on the 6th day of February, 1925, was by said court adjudged to pay a fine of $250 and costs $3.50, and to serve thirty days in the county jail at hard labor:

"Now, therefore, you are hereby commanded to take the said Lee Dawes into your custody and confine him in the jail of said county for thirty days and upon failure to pay the costs to be paid, said fine and cost, defendant to serve one day in jail at hard labor for each one dollar of such fine and costs until such fine and costs are paid; sentence to begin this day.

"In testimony whereof, witness my hand and seal this 6th day of February, 1925.

"J. T. Parks, District Judge."

The other two commitments are alike in form, and differ only in the penalty imposed. No 1349 recites, "To pay a fine of $250 and costs of $3.50, and to serve 60 days in the county jail at hard labor," with the further recital, "Sentence to begin at expiration of case No. 1348." No. 1350 recites, "to pay a fine of $250 and costs of $3.50, and to serve six months in the county jail at hard labor," with the fur-

ther recital, "Sentence to begin at the expiration of sentence in case No. 1349."

Several questions are presented for decision; however it would serve no useful purpose to review all these questions. Contempts of court in this state are governed by constitutional and statutory provisions, and not by common-law rules. It is essential to the validity of proceedings in contempt, subjecting a party to a fine and imprisonment, that they show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized. Cress v. State, 14 Okla. Cr. 521, 173 P. 854.

In cases of direct contempt under the constitutional and statutory provisions, the contemner being present in court, neither a formal charge against him in writing or process is required; only an opportunity to be heard is given. No record is made other than the judgment, in this, as the statute provides, "the substance of the offense shall be set forth in the order for his confinement, and made a matter of record in the court." Section 1700, C. S. 1921. This provision can only mean that the order of commitment must contain a recital of those facts which make it a direct contempt, and is mandatory in its terms.

In Ex parte Sullivan, 10 Okla. Cr. 465, 138 P. 815, Ann. Cas. 1916A, 719, it is held:

"Under the clause of section 25 of the Bill of Rights, providing, 'In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given,' an opportunity to be heard before a penalty or punishment is imposed for contempt is an indispensable essential to the administration of due process of law as contemplated by the constitutional inhibition that 'No person shall be deprived of life, liberty, or property without due process of law.' Section 7, Bill of Rights."

In the opinion we said:

"When a person is held under a commitment for con-

tempt of court, such person may, by habeas corpus, secure a determination as to the jurisdiction of the court in ordering the commitment. It matters not what the general powers and jurisdiction of the court may be, if it acts without authority in the particular case, its judgment and order is a mere nullity. And if it be adjudged that the committing court had no jurisdiction, and that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody, in order to preserve the constitutional right of all persons not to be deprived of liberty without due process of law."

In Hosmer v. State, 24 Okla. Cr. 312, 218 P. 164, it was held:

"The constitutional 'right to be heard,' in a contempt proceeding, means the right of the accused to introduce evidence in a formal, orderly manner in justification or in mitigation of the offense, and to have such evidence considered before judgment in contempt is rendered."

The transcript of the proceedings shows that only two judgments of conviction were pronounced by the court against the petitioner while he was present in open court, and it is impossible to ascertain from the transcript whether the first sentence was for the contempt committed at the previous term of court or on account of the language and conduct of the petitioner in open court on the previous day. It is also manifest that the petitioner was not accorded his constitutional "right to be heard" when the second sentence was imposed. The record shows that the three judgments of conviction pronounced in the absence of the petitioner are the judgments upon which the three commitments were issued.

One of the reasons for the rule of the common law, requiring that the defendant should be personally present before the court at the time he is sentenced, is that "he may have an opportunity to say why judgment should not be given against him." It follows that a judgment or order committing to jail upon a charge of direct contempt, made

in the absence of the contemner, is void, because he is denied his constitutional right to be heard.

In Ex parte O'Brien, 127 Mo. 477, ·30 S. W. 158, the Supreme Court of Missouri held that a commitment issued by a court of one charged with a contempt committed in the immediate view and presence of the court is illegal, where no judgment was rendered, or ordered to be entered. before the commitment, adjudicating that the petitioner had been guilty of contempt.

In Ex parte Mettler, 50 Mont. 299, 146 P. 747, the Supreme Court of Montana held that, under the statute providing that where a contempt, committed in the court's presence, is punished summarily, the order shall recite the facts as occurring in such presence; án order not stating such facts would preclude review by the Supreme Court and cannot stand.

In Ex parte Lake, 65 Cal. App. 420, 224 P. 126, it was held that, in a case of direct contempt, the order of commitment must set forth facts constituting the contempt, and is void unless it shows on its face facts sufficient to constitute a legal contempt; mere conclusions being insufficient.

In ·State v. Plese, 235 P. 961, the Supreme Court of Washington held that:

"Judgment in contempt proceedings, reciting that court found defendant guilty of contempt as charged in affidavit filed in case, held not to make findings of fact."

And further that:

"Defendant did not waive failure of court to make findings of fact in contempt proceedings, though he did not request them until long after judgment had been made."

It will be observed that the transcript of the proceedings herein set out is a transcript of the stenographic notes of the court reporter and no part of the record proper. The statute (section 2777, C. S. 1921) provides what shall con-

stitute a record of the action to be made by the court clerk when judgment upon a conviction is rendered, and such record includes a copy of the judgment. In the sheriff's return are included certified copies of the judgments of conviction which were filed by the court clerk after the writ in this case issued; however these judgments do not recite any of the facts upon which the judgments are based, and are identical in their recitals with the orders of commitment.

Without considering other objections to the sufficiency of the judgments in question and the orders of commitment issued thereon, it follows from what has been said that, in failing to state facts which constituted the alleged contempt, making the same a matter of record in the court, and in failing to set forth the substance of the offense in the orders of commitment, said judgments of conviction and orders of commitment are void.

The writ of habeas corpus is therefore allowed, and the petitioner discharged.

By order of this court petitioner was admitted to bail pending the final determination of this proceeding. The bond furnished in response to that order is discharged, and the sureties thereon exonerated.

BESSEY, P. J., and EDWARDS, J., concur.