## W. V. PRYOR v. STATE.

No. A-7732.  Opinion Filed June 28, 1930.
(290 Pac. 345.)

D. A. McDougal, C. B. Rockwood, and Grady Lewis, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

EDWARDS, P. J.   The plaintiff in error, hereinafter called defendant, was adjudged guilty of a direct contempt in the district court of Creek county and was sentenced to pay a fine of $75 and to serve 10 days in the county jail.

The record discloses a state of facts about as follows: In a suit in the district court of Creek county wherein D. B. Jones was plaintiff and J. W. Thompson was defendant, the said Thompson was adjudged in contempt for failure to comply with certain restraining orders.   He demanded and was granted a jury trial.   Honorable Thomas S. Harris, district judge, in whose division the matter was pending, stated he would not hear the contempt proceedings.   Honorable John L. Norman, another judge of that district, came to hear the contempt matter, but owing to press of other business did not reach it on the date set nor the two days next thereafter.   On the second day after the date to which it was assigned, Judge Harris made an amended citation for contempt, which at the noon recess of that day was served upon defendant. The record then recites:

" * * * The said W. V. Pryor made the remark that Judge Harris should not be signing orders in that case, referring to the Thompson case, and that he was disqualified in said case and he knows it, and it looked like he was trying to help the other side out.

"Thereupon, the said Thomas S. Harris, Judge, immediately convened court and summoned the said W. V. Pryor and asked him if he had any reason to show why he should not be adjudged in contempt of this court, and stated to the said W. V. Pryor what he was charged with. The said W. V. Pryor demanded that he be informed of the nature of the charges against him and that the charges be reduced to writing, and that he have an opportunity to be heard. The court denied said request, stating that in his opinion the said W. V. Pryor was in direct contempt of court and was not entitled to be heard, and added that the said W. V. Pryor was not entitled to a jury trial, to all of which W. V. Pryor excepted. * * * "

Then follows a recital of the judgment and an order to the sheriff to forthwith confine the defendant, and a further recital that at the time neither the clerk of the court nor any deputy nor court reporter was present. Upon this point the judge said:

" * * * The Court. Let the record show that the statement was made in the chambers of the court adjoining the courtroom, in the presence of the judge, the presiding judge, of this division of this court. * * * Any member of this Bar, or officer of this court that comes in to the judge's chambers, where the presiding judge is, the judge of this court, and makes such a statement as that, that the court is lined up with the other side, and in collusion with the other side—with that statement pending in this court—isn't entitled, in my opinion, to appear in a court of justice, and should be disbarred from the practice of law. That is just the way I feel about it. I am going to ask the sheriff to carry out this judgment. Let the record show that the court finds that one W. V. Pryor to be in direct contempt of this court, and fixed

his punishment at ten days in the county jail, and a fine of $75."

It is first argued that the district court was not in session at the time the statement was made upon which the claim of contempt is based. A "district court" is defined in Jones v. Busby, 37 Okla. Cr. 68, 256 Pac. 758, as:

"A district court is an arm of the state government, vested with judicial power, consisting of a judge and a clerk and other officers necessary for the transaction of business assembled to administer justice at a time and place where by law it was authorized to be held * * *" —citing Eichoff v. Caldwell, 51 Okla. 217, 151 Pac. 860, L. R. A. 1917E, 359.

There are, however, decisions holding in substance that a mere temporary recess or adjournment of the court does not dissolve the court and that a constructive contempt may be committed during such recess or intermission. 6 R. C. L. 492, § 5, notes.

The record before us does not disclose that the particular division of the court over which Judge Harris presided had been in session and that the contemptuous statement was made during any temporary intermission or recess. Unless this were so, there is no contempt.

Section 1697, Comp St. 1921, is:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may

be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of wilful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court."

It is well settled that where a contempt is indirect the party charged shall be notified in writing of the accusation and upon demand have a trial by jury. Section 1699, Comp. St. 1921; Emery v. State, 29 Okla. Cr. 29, 232 Pac. 128; Blanton et al. v. State, 31 Okla. Cr. 419, 239 Pac. 698 and authorities cited.

There is some confusion in the decisions as to whether or not the definition of "contempt," section 1697, supra, is all-inclusive. It was held in substance in Ex parte Ballew, 20 Okla. Cr. 105, 201 Pac. 525, that the constitutional and statutory definitions of "contempt" exclude all acts not included in its terms. This holding was overruled in Hosmer v. State, 24 Okla. Cr. 312, 218 Pac. 164. This particular holding in the Hosmer Case was in turn overruled in Ex parte Owens, 37 Okla. Cr. 118, 258 Pac. 758. These cases are directed to that part of section 1697, defining a direct contempt. A "direct contempt" can be committed only during the session of the court and in its immediate view and presence or so near to it as to interrupt its proceedings. Any contempt committed not during the session of the court or not in its immediate view and presence or so near as to interrupt its proceedings is "indirect contempt." The statutory definition of "indirect contempt" is considerably broadened in Emery v. State, 29 Okla. Cr. 29, 232 Pac. 128, where it is said:

"An 'indirect contempt' of court consists of an act having a tendency to obstruct and embarrass or prevent the due administration of justice, done at a distance, and

not 'during the session of the court and in its immediate view and presence.' "

Whether or not this language is within the statutory definition of "indirect contempt," section 1697, there must be power in the court, either inherent power or power derived from the statute, broad enough to enable the court to enforce respect for its authority and to protect itself against unfounded and scurrilous accusations, threats, or other forms of intimidation made against it which impede, embarrass, or obstruct the due administration of justice. This power, however, must be exercised in the manner prescribed by law by written accusation, notice to accused, reasonable time for defense, and, upon demand, trial by jury. Section 1699, Comp. St. 1921; Emery v. State, supra; Cress v. State, 14 Okla. Cr. 521, 173 Pac. 854; Dawes v. State, 31 Okla. Cr. 397, 239 Pac. 689.

Since the statement upon which the charge of contempt is based, if it constitutes a contempt at all, is no more than indirect contempt, then the order is void for the reason there was no written accusation. Section 1699, Comp St. 1921. It is further in violation of article 2, § 25, of the state Constitution. This section of the Constitution in part provides:

" * * * In no case shall a penalty or punishment be imposed for contempt, until an opportunity to be heard is given."

This section has been several times construed, and it is held, in substance, that before a person can be punished for a contempt he must be given an opportunity to be heard and any judgment of conviction rendered without a hearing or without an opportunity to be heard is void because in violation of the constitutional provision,

supra. Ex parte Sullivan, 10 Okla. Cr. 465, 138 Pac. 815, Ann. Cas. 1916A, 719; Ex parte Hosmer, 24 Okla. Cr. 312, 218 Pac. 164: Ex parte Dawes, 31 Okla. Cr. 397, 239 Pac. 689; Ex parte Morse, 141 Okla. 75, 284 Pac. 18.

From the record it appears that in the first instance the court asked defendant if he had any reason why he should not be adjudged in contempt, and stated to defendant what he was charged with, and upon defendant then asking that the charges be reduced to writing, the court denied the request, stating that in his opinion defendant was in direct contempt and "was not entitled to be heard," and thereupon adjudged defendant to be in contempt. This denial of the right to be heard clearly violates the provisions of article 2, § 25, of the Constitution. The judgment is invalid. The cause is reversed and remanded, with instructions to dismiss.

DAVENPORT and CHAPPELL, JJ., concur.