## STATE ex rel. ATTORNEY GENERAL v. MARTIN.

No. 18080. Opinion Filed May 21, 1927.

(Syllabus.)

**1. Contempt—Nature of Proceeding—Sufficiency of Facts Charged.**

Proceedings to punish for contempt as herein initiated is not a criminal prosecution. Such are regarded as sui generis. Information states facts sufficient to charge contempt.

**2. Same—Direct Contempt of Court—Filing Contemptuous Motion Addressed to Supreme Court.**

The preparation, signing, and filing of a motion with the clerk of the Supreme Court, addressed to the attention of the court, containing contemptuous language, is a direct contempt of this court under the statute and the common law in force in this state.

**3. Same—Evidence Establishing Falsity of Charges of Misconduct of Judges Contained in Motion.**

Evidence examined. It conclusively establishes the untruth of the charges of official misconduct of judges of this court as charged in the motion filed by respondent.

**4. Same—Duty of Attorney to Ascertain Facts Before Filing Motion Charging Misconduct of Judge.**

Where an attorney prepares, signs, and files a motion for leave to file petition for rehearing in a cause, charging dishonesty and other official misconduct on the part of a judge in the writing or filing of an opinion or judgment, held, good faith on his part requires the most careful and thorough investigation as to the truthfulness of the averments therein.

**5. Same—Bad Faith of Attorney in Failing to Verify Defamatory Statements of Client.**

Evidence examined. Client had litigation where referee took testimony and filed recommendation awarding judgment in a fraud case against client; the report of referee was confirmed by the district court and the judgment was affirmed by the Supreme Court. Evidence shows client had every opportunity to be heard, and he had caused to be printed and circulated scurrilous articles attacking the integrity of the judges

concurring in the opinion and judgment against him. Held, that respondent, employed to secure a rehearing, is not protected in adopting as averments of the truth upon information or otherwise statements of the client attacking the official conduct as herein done. He had opportunity to verify the statements of his client, and his failure to do so, together with his conduct herein, shows his bad faith.

**6. Same—Bad Faith Shown by Reiteration of Charges After Failure of Proof of Charges on Hearing.**

Where an attorney, who prepared and filed a motion charging judges of the court with official misconduct, is cited for contempt, and upon the trial fails to establish or attempt in good faith to prove such charges, and the testimony overwhelmingly shows the lack of justification for such averments, held, that the reiteration of the truth of said charges and the continuation of the attack in printed brief and oral argument on hearing after the taking of evidence is concluded, is the strongest kind of evidence of bad faith on the part of respondent.

**7. Same—Evidence of Contempt of Court—Sufficiency.**

Evidence shows respondent did not act in good faith in preparing, signing, and filing the motion. Held, he is guilty of contempt of court as charged.

Original proceedings by George F. Short, Attorney General, against H. B. Martin for contempt of court. Respondent found guilty. (All Justices of the Supreme Court having certified their disqualifications in the proceeding, the following were duly appointed and qualified as Special Justices: W. E. Utterback, H. D. Henry, Kelly Brown, George Tice, Dan Huett, W. N. Lewis, A. R. Swank, J. A. Diffendaffer, and A. Scott Thompson.)

C. B. Cochran and D. H. Linebaugh, amici curiae.

H. A. Ledbetter, A. F. Moss, Christy Russell, and C. A. Warren, for respondent.

THOMPSON, Special Justice. This proceeding is one for contempt of this court. We believe that a statement of facts preceding the filing of the motion before this court, out of which grew the charges herein being tried, will be helpful in obtaining a clear understanding of the discussion hereinafter indulged.

In 1921 a large number of minority stockholders of the Riverside Oil & Refining Company commenced an action in the district court of Oklahoma county, Okla., against the said company, O. O. Owens, and others

having control and management of said company and its affairs, charging mismanagement and the wrongful appropriation of its property, and for the appointment of a receiver of said company, cancellation of a contract between it and O. O. Owens, and for an accounting against said Owens and other relief. The issues were referred to John H. Halley, and he later took testimony therein, and filed his report with the court substantially finding all the issues in favor of the plaintiffs, and recommended a personal judgment in favor of the company and against O. O. Owens for a sum in excess of $90,000. Upon presentation to the court the referee's report was approved and judgment was entered in accordance with the recommendations therein made. An appeal was taken to this court and the cause was docketed as No. 13646. The case was advanced, briefed, orally argued and submitted. On February 12, 1924, an opinion of this court written by Justice Harrison was filed, modifying the judgment of the district court in such a manner as to constitute a practical reversal in favor of O. O. Owens. Both parties filed petitions for rehearing. Oral argument was had, and on December 16, 1924, an order was entered in open court granting a rehearing. In January, 1925, the court was reorganized after newly elected members qualified, and the cause regularly set down for oral argument on February 10, 1925. It was argued orally and again submitted. On July 7, 1925, an opinion of the court written by Justice Clark was rendered and filed, affirming the judgment of the district court. This opinion was concurred in by Justices Nicholson, Mason, Riley, and Lester, and is reported in Riverside Oil & Refining Co. v. Lynch, 114 Okla. 198, 243 Pac. 967. There was no dissenting opinion filed.

The plaintiffs in error, O. O. Owens et al., filed a petition for rehearing, which was denied on the 15th day of December, 1925, and thereafter filed an application for permission to file a second petition for rehearing, which application was denied on March 2, 1926. The mandate of this court was issued and was duly recorded in said district court.

On March 4, 1926, the receiver qualified under the judgment and a motion was made by the defendants therein to vacate the order appointing a receiver. The district court entered an order restraining the receiver from taking possession of the property of the company. Thereupon the receiver commenced an original action in this court, numbered 17409, asking for a writ of mandamus directing the district judge to vacate the order restraining the receiver and to place the receiver in charge of the property of the company and to further execute the judgment of the court as affirmed by this court.

The cause was heard before a conference of the court and submitted on written briefs. On June 5, 1926, O. O. Owens personally filed a motion to disqualify in said cause the following members of this court, to wit: Justices Clark, Nicholson, Mason, Lester, and Riley, who were the Justices who had concurred in the opinion rendered in cause No. 13646. Attached to this motion was an affidavit 16 pages in length, signed by O. O. Owens, supporting his motion. The affidavit contains statements which we would say were at least intemperate, charging these named Justices with bias and prejudice against him in rendering the opinion in cause No. 13646.

This court in No. 17409 denied the motion to disqualify the Justices, and on June 22, 1926, an opinion of this court written by Justice Mason was filed, directing the district court of Oklahoma county to vacate the restraining order, place the receiver in possession of company property, and otherwise execute the judgment which had been affirmed by this court. This opinion is reported in Harris v. Chambers, 121 Okla. 75, 247 Pac. 695.

After O. O. Owens filed his motion in 17409 to disqualify the Justices named, Judge J. F. Sharp and Mr. A. F. Moss, who had been his attorneys, withdrew from the case.

Beginning on April 2, 1926, and thereafter contemnor therein, H. B. Martin, attorney at law, hereinafter referred to as respondent, filed in behalf of O. O. Owens or the Riverside Oil & Refining Company, or both, suits or proceedings in various courts attacking the validity of the judgment affirmed in cause No. 13646, charging it was unconscionable, inequitable, and supported by no evidence. One of these cases was filed in the United States Court for the Western District of the state of Oklahoma, and a proceeding to like effect was instituted in the United States Court for the Eastern District of the state of Oklahoma.

On June 23, 1926 (the day following the filing of the opinion of this court in cause No. 17409), O. O. Owens filed a suit in the district court of Tulsa county, Okla., against J. D. Lydick, J. B. Dudley, attorneys opposing him in Nos. 13646 and 17409, Hal John-

son, and John H. Halley, district judge and referee, respectively, who heard his case in the district court of Oklahoma county, which afterwards reached this court as No. 13646. He also joined as defendants former Justice McNeill and Justices Nicholson, Riley, and Clark of this court, and others. The plaintiff in this suit prayed that the judgment affirmed in cause No. 13646 in this court be set aside and that he recover from the defendants, including the members of this court joined as defendants, judgment in the sum of $100,000. The petition in this case charged a conspiracy on part of the defendants, including members of this court named, to injure and defraud him, O. O. Owens. It also contained other charges against said Justices which, if sustained, would be sufficient grounds for impeachment and removal from office. Since April 5, 1926, respondent has been representing O. O Owens in these suits filed. So far as this court is advised, no trial has been had in any of the cases so filed by O. O. Owens wherein he was represented by respondent.

The opinion in the mandamus suit, cause No. 17409, was filed in this court on June 22, 1926. No petition for rehearing was filed, and on January 3, 1927, O. O. Owens, acting through his attorney, respondent herein, prepared and filed with this court the following motion in cause No. 17409:

(Caption here omitted.)

"Motion of the Defendants, Riverside Oil & Refining Company, a Corporation, O. O. Owens and G. R. LeFever for leave to file a Petition for Rehearing of Said Cause, and to Stay the Mandate and Writ of Mandamus in Said Cause.

"Come now the defendants, Riverside Oil & Refining Company, a corporation, and O. O. Owens and G. R. LeFever, and move the court for leave to file a petition for rehearing of said cause and a petition to stay the mandate and writ of this honorable court in said cause, pending the determination of such petition for rehearing, and for the grounds of said motion respectfully show to the court the following facts:

"1. Heretofore, to wit, on May 6, 1926, there was filed in this cause a petition, praying a writ of mandamus to issue to the Honorable T. G. Chambers, one of the judges of the Thirteenth Judicial District of the state of Oklahoma, sitting as judge of the district court of Oklahoma county in said state, and against these moving defendants, who were at the time parties to a cause pending in said district court, in which the said S. D. Lynch et al. were plaintiffs. and these moving defendants et al. were defendants, commanding the said court and these moving defendants not to proceed further in said cause.

These movants show that at the time said petition was filed in said cause these movants and their codefendants were prosecuting, in the aforesaid cause then pending in the said district court, a petition and motion to remove one V. V. Harris, who was pretending to act or was acting as receiver of the property of the aforesaid Riverside Oil & Refining Company, and said movants show that after the filing of the aforesaid petition in this cause briefs were duly submitted to this honorable court by the respective counsel of the parties, and oral argument was heard, but no evidence was introduced, and that thereafter, on June 16, 1926, an opinion was handed down by this court, deciding, in substance, that the relief prayed for be granted, but no writ of mandamus and no mandate has been issued in this cause, either to the respondent judge or against these movants, and no petition for rehearing has been filed in this cause.

"2. These movants show that the reason no petition for rehearing was filed in this cause was and is that these movants are informed and believe that this cause was never considered by this honorable court, and that the opinion handed down as the opinion of this court, purporting to have been written by one of the honorable Justices of this court, Justice Charles W. Mason, was in fact written by one J. D. Lydick, who was one of the counsel for the plaintiffs in this cause, and that said opinion having been prepared and written, as aforesaid, was copied in the office of the aforesaid Justice Charles W. Mason, and handed down by him as the opinion of this court, without evidence in this cause and without any consideration of either the pleadings in this cause or the briefs filed therein, either by the said Justice Charles W. Mason or any of the other justices in this court. And movants further show to the court that before the commencement of this action there had been prosecuted in the district court of Oklahoma county aforesaid, an action by the said S. D. Lynch et al. against these movants et al., which said action was commenced on February 21, 1921, and tried before a referee of said district court, one John H. Halley, in the latter part of the year 1921, and before the 8th day of June, 1922, was passed upon the journal of said district court by which, among other things, it was adjudged and decreed that this movant, O. O. Owens, who was at the time general manager and vice president of the movant company, was indebted to the movant company in a sum aggregating $95,324.59, because of the conversion of the property of the said company to the use and benefit of the said Owens, and these movants show to the court that a proceeding in error was duly prosecuted in this court, from said judgment and decree, numbered upon the dockets of this court 13646, and a record and case-made of all the proceedings of the

said district court was duly made, settled, signed, allowed, authenticated, and filed in the said district court, and filed in this honorable court in said proceeding in error. That in said record there was no evidence whatever tending to support the said judgment of the said district court, and that said judgment and decree in said respect was contrary to all of the evidence heard and introduced in the trial of said cause, and movants show that also in said decree, as a consequence of the said judgment and decree against the movant, Owens, it was ordered and decreed that the plaintiff in this cause, the said V. V. Harris, be and was appointed general receiver of all the property of the defendant corporation. and directed to take the custody of said property into his possession, and hold and preserve and operate the same under the orders of the said district court, and movants show that said judgment and decree was duly superseded pending the determination of said cause upon said petition in error, and that thereafter, upon the consideration of this honorable court, an opinion and decision was rendered in said cause, modifying said judgment and decree theretofore rendered in said district court, in that the judgment against the said Owens as to $93,324.59 of said judgment was set aside and reversed, and the aforesaid judgment and decree was reversed as to the appointment of said receiver, and as to the costs of said action, and movants show that thereafter, on the 7th day of July, 1925, another opinion was written, promulgated, and filed in said cause, upon its face affirming the aforesaid judgment and decree of said district court in all things.

"3. Movants say that they are informed and believe, and therefore plead, that the purported opinion of this court, filed as aforesaid , July 7, 1925, was prepared by the Honorable J. W. Clark, one of the Justices of this court, under the direction and control of the Honorable George M. Nicholson, who was at the time Chief Justice of this court, and that the said Nicholson was, at the time, under the control and direction of one J. B. Dudley, one of the counsel in said cause. That the aforesaid Justice Clark, in the preparation of the said opinion, did so prepare the same without knowledge of what was contained in the case-made in said cause, and without consideration of the briefs in said cause. but in preparing said opinion the said Justice Clark was directed by the aforesaid Justice. Nicholson to prepare an opinion affirming the judgment of the trial court, and movants say that they are informed and believe. and therefore plead, that the said purported opinion did not receive the concurrence of a majority of this court at any time before or at the time of its filing, and that the aforesaid opinion was prepared and filed and promulgated without the examination by the said Justice Clark. or any of the Justices purporting to concur in said opinion upon its face, of the record in said cause, either as to the evidence or the pleadings, and without consideration, examination or knowledge of the briefs in said cause and what they contained.

"4. And movants therefore say that said pretended judgment and opinion of this honorable court was in truth and fact not its judgment and opinion, and never received the consideration of this honorable court.

"5. And movants say that in the record and case-made aforesaid, filed in said cause No. 13646, the only basis for the judgment and decree of the district court appealed from appearing was a certain private letter written by one J. B. Dudley to the said John H. Halley, referee in said cause when pending in the aforesaid district court many weeks after all the evidence in said cause had been introduced and heard, and the evidence had been closed, and the parties had departed from the court, in which letter the said Dudley directed the said referee, as to what items and charges should be made and found against the said Owens as misappropriations and conversions of the funds and property of the said defendant corporation.

"6. Movants show that upon said purported judgment and opinion of this honorable court, a mandate issued out of the office of the clerk of this honorable court to the district court of Oklahoma county, aforesaid, on the 8th day of March, 1926, directing, among other things, that the said district court proceed in the said cause No. 30413, in that court, in accordance with the directions of the aforesaid opinion, and that at the time of the commencement of this action, the honorable district court was under the direction of said mandate, proceeding regularly, in accordance with the aforesaid purported opinion and mandate to hear and determine a motion then pending in said district court and said cause No. 30413. whether at that time it was proper to continue the property of said defendant corporation in the custody and control of the aforesaid receiver, or whether it was to the best interest of the said defendant corporation to return its property to the custody and control of its regularly constituted officers.

"7. Movants further show that argument of counsel had been presented upon said motion and petition last above referred to, to the Honorable T. G. Chambers, one of the judges of said court, and that said court had, upon consideration, ruled and held that under said opinion and mandate, the said district court had jurisdiction to hear and determine said action. That thereupon this cause was commenced by the plaintiffs herein including the said V. V. Harris, acting as receiver of the defendant corporation and the agent of the said honorable district court of Oklahoma county, to prevent the court of his appointment and under the orders of which he was acting, from judicially examin-

ing the issues between the contesting parties in the cause in which he had been appointed.

"8. Movants further show to the court that the consideration and determination of the petition of the plaintiffs in this cause was substantially a reconsideration and construction of the last opinion of this court in cause No. 13646, and involved determining the meaning and effect of said opinion, as well as the correctness of said opinion, with reference to the record upon which it proceeded in said cause No. 13646. Movants say that they are advised, and therefore plead, that to determine this cause and decide the same in the manner hereinbefore in this motion described, without judicial consideration and without the benefit of the briefs presented in said cause and without knowledge on the part of the Justices participating in said decision of what was in the case-made upon which said causes both proceeded, was a legal fraud against the rights of these movants and was a denial of due process of law under the guaranties of the Constitution of the United States of America, and particularly the Fourteenth Article of Amendment thereto.

"9. And movants say that they are advised and therefore plead, that the control, in the determination of this cause, of the Honorable J. W. Clark, one of the Justices of this honorable court participating therein, by the Honorable George M. Nicholson, another of the Justices of this honorable court participating therein, and the control of the Honorable George M. Nicholson in the premises by the said J. B. Dudley, one of the counsel in said cause. is, in law and fact. a fraud against the rights of these movants.

"10. And movants say that they are advised. and therefore plead, that the manner in which the opinion in this cause was prepared. filed and promulgated, as hereinbefore set out. constitutes a legal fraud against the rights of these movants, and a deprivation of their property without due process of law. against the guaranties of the Fourteenth Amendment, aforesaid, of the Constitution of the United States of America.

"11. And movants say that, if given the process of this court. so that the witnesses having knowledge of the facts hereinbefore set out and pleaded may be examined in this honorable court touching said facts, the same will be established by said proof.

"Wherefore these movants pray that, by the consideration and orders of this honorable court, they may be permitted to introduce the testimony of witnesses and the affidavits of witnesses to support the averments of the facts pleaded in this motion, and that upon the consideration of said proof, proper orders of this court be made to enable the court to reconsider and determine this cause, according to the rights of the parties, and to manifest justice and law.

"(Signed) H. B. Martin,

"Counsel for Riverside Oil & Refining Company,

"O. O. Owens, and G. R. LeFever, Movants.

"State of Oklahoma, county of Tulsa, ss.

"O. O. Owens, being first duly sworn, says that he is one of the defendants in the above entitled case; that he has read the foregoing motion and that the statements, allegations and averments therein contained upon information and belief, he is informed and believes to be true; that the statements, averments and allegations therein positively made are true.

"(Signed) O. O. Owens.

"(Seal)

"Subscribed and sworn to before me this 1st day of January, 1927.

"(Signed) L. E. Braddon, Notary Public.

"My commission expires July 18, 1929."

That thereafter and on January 7, 1927, a rule to show cause was issued out of this court and against said respondent, a copy being as follows:

(Caption being here omitted.)

"Rule to Show Cause.

"The State of Oklahoma to H. B. Martin:

"Whereas, at the request of the Supreme Court of Oklahoma, the Attorney General of the state of Oklahoma has filed in this court an information charging that you, the said H. B. Martin, did on January 3, 1927, prepare and file with the Supreme Court of Oklahoma, in case No. 17409, a certain instrument in writing designated, 'Motion of the Defendant, Riverside Oil & Refining Company, a corporation, O. O. Owens, and G. R. LeFever, for leave to file a petition for rehearing in said cause, and to stay the mandate and writ of mandamus in said cause,' and charging further in said information that said instrument prepared and filed by you reflects upon the honor, integrity and purity of this honorable court, and was designed. intended, and calculated to hold up to public opprobrium the said court, and to incite public contempt for this court and certain of the Justices thereof, and for the purpose of leading the public of this state to distrust the fairness and partiality of the decisions of this court, and for the purpose of influencing. intimidating. and coercing this court and the Justices thereof, and for the purpose of impeding and corrupting the due administration of justice with reference to cause No. 17409 in this court, that the said written instrument imputes to the Supreme Court of Oklahoma and certain Justices thereof unworthy motives and dishonorable

conduct tending to bring said court and its justices into disrepute, and to destroy the respect of the public for this court, for its decisions, honesty, integrity, and its dignity. A copy of which said information is hereto attached.

'Now, therefore, you, the said H. B. Martin, are hereby commanded to be and appear before the honorable Supreme Court of the state of Oklahoma on Thursday, January 13, 1927, at 10:00 o'clock in the forenoon in the Supreme Court room in the city of Oklahoma, Oklahoma county, state of Oklahoma, then and there to show cause, if any you have, why you should not be held in contempt of this court and punished accordingly for the publishing and filing of the written instrument aforesaid.

"It is further ordered that the marshal of this court forthwith deliver a copy of this notice to the respondent.

"Done by order of the Supreme Court of the state of Oklahoma on this the 7th day of January, 1927.

"(Signed) Geo. M. Nicholson.
"Attest:

"Wm. M. Franklin,
"Clerk of the Supreme Court
"By Reuel Haskell, Jr., Deputy."

The information filed by the Attorney General of the state in this matter set out at length a true copy of the motion filed by respondent as hereinbefore quoted and in language similar to that expressed in the rule to show cause charged bad faith and an attempt by respondent to incite public contempt for the court and the members thereof.

Upon appearance before the court on the 13th day of January, 1927, respondent fi ed his answer and return, a copy of which is as follows:

(Caption here omitted.)

"Answer and Return of the Respondent to Rule to Show Cause.

"Comes now the respondent, H. B. Martin, pursuant to the citation heretofore issued in said cause against him and for his return to said citation and his answer to the information attached thereto, says and avers:

"1. That he objects to the legal sufficiency of the information for contempt filed on behalf of the relator in that the same does not state facts sufficient upon its face to constitute the offense of contempt of court or any public offense.

"2. Respondent admits that on May 26, 1926, there was an action filed in the Supreme Court of the state of Oklahoma, styled 'V. V. Harris et al. v. T. G. Chambers, O. O. Owens et al., No. 17409' and that an opinion was rendered by the Supreme Court

of Oklahoma in said cause on June 22, 1926, and was duly filed in said cause, but that no writ or mandate has issued in said cause. That on January 3, 1927, the respondent was an attorney at law licensed to practice before the Supreme Court of the state of Oklahoma, and on the said date the respondent, as counsel for the Riverside Oil & Refining Company, O. O. Owens, and G. R. LeFever, prepared and filed in this court in said cause No. 17409 a certain instrument in writing designated 'Motion of defendant Riverside Oil & Refining Company, a corporation, O. O. Owens and G. R. LeFever, for leave to file a petition for rehearing in said cause and to stay the mandate and writ of mandamus in said cause,' and that said instrument was in writing and a true, full and complete copy of the same is exhibited in the information filed in this cause.

"3. Respondent denies that said instrument so filed by him in said cause No. 17409 was on the said 3rd day of January, 1927, presented to said court, but avers the fact to be that the said instrument was filed in the clerk's office when the court was not in session and that the said instrument was not at that time or at any other time presented to said court at all by this respondent except that the same was filed as aforesaid in the office of the Clerk of this court.

"4. Respondent denies that said instrument was designed or intended or calcu'ated by this respondent to hold up to the public opprobrium the said court or to incite public contempt for said court or any of the Justices thereof, and denies that the same was filed by the respondent for the purpose of leading the public of this state to distrust the fairness and partiality of the decisions of said court, and denies that it was filed by the respondent for the purpose of influencing, intimidating, or coercing the said court or any of the Justices thereof in the further consideration thereof in the said cause No. 17409, or its further actions and proceeding therein, and denies that said writing was further intended to impede or corrupt the due administration of justice with reference to said cause No. 17409, and denies that said instrument was filed to bring the honorable court or any of its Justices into disrepute or to destroy the respect of the public for this court or for its decisions, honesty, or integrity, or dignity.

"5. Respondent further says that before the preparation of said document filed in cause No. 17409, as aforesaid, this respondent was counsel for the defendants Riverside Oil & Refining Company, O. O. Owens, and G. R. LeFever in said cause, and that the said defendants acting by the defendant O. O. Owens, who was thereunto duly authorized, requested this respondent to proceed in said cause to obtain leave of the court therein to file, out of time, a petition for rehearing of said cause and the motion to stay the

issuance of any writ or mandate in said cause pending the determination of said petition for rehearing, and to file at the same time in said cause a stipulation in writing between the parties thereto, requesting all of the Justices of said court, except the Honorable Robert Hefner, to certify their disqualification to act in said cause, and respondent says that, at the same time that this respondent filed the motion exhibited in the said information in this cause, he filed, on behalf of the said defendants in said cause No. 17409 a stipulation in writing entered into as aforesaid between all the parties to said cause that the disqualification of the aforesaid Justices of this court should be by them respectfully certified. And respondent says that he intended and expected that said stipulation of the parties would be acted upon by the Justices of this honorable court, and that their disqualification to try said cause would be so certified, and respondent at the time had no expectation and could have had none, that the disqualified Justices of this honorable court would proceed at all in reference to said cause, and that respondent had no intention, wish, or desire, in the filing of said motion, or either of them, to influence any of the Justices of this honorable court. And respondent says that he filed the aforesaid motion for the purpose of pleading upon the record of the court the facts upon which his clients relied to support their motion for leave to file a petition for rehearing so that the court might be advised of said issues of fact, and that the adverse parties might be notified of the same.

"6. Respondent says that he in good faith believed that the time said motion complained of was filed by him that this honorable court had jurisdiction to stay its writ and mandate in said cause and to grant a rehearing thereof and to grant leave to file a petition for such rehearing and to reconsider its opinion and decision in said cause; and respondent says that at the time of the filing of said motion this respondent was familiar with the record in said cause and the briefs filed therein, and the opinion of the court filed therein. and that this respondent in good faith believed that in said opinion and decision there was manifest error prejudicial to the right of the defendants, and that said opinion and decision upon their face ought to be reconsidered and set aside for such errors appearing therein. And respondent in good faith believed at the time aforesaid that this honorable court had jurisdiction to set aside the judgment and decision in this cause for collateral fraud practiced on the part of the prevailing parties in obtaining said judgment and decision. if such fraud had in fact been practiced: and respondent says that before the writing by this respondent of the motion complained of respondent consulted further with his client, the defendant O. O. Owens, and with other

persons, as to the facts pleaded in said motion complained of, and that respondent received assurance from his said client that the facts set out in said motion complained of and all of said facts were true, and that witnesses within the process of this honorable court were aware of said facts and all of them, by which witnesses said facts could be clearly and conclusively established. Respondent says that he believed the statements so brought to him by his said client and relied upon the same and that he had no reason, ground, or suspicion to doubt the full truthfulness of each and all of said statements; and that if the said defendants were allowed the process of said court to compel the production of said witnesses that each and all of the allegations of said motion would be conclusively established by said proof.

"7. Respondent says that he in good faith believed that if said facts existed they were sufficient in law to afford relief to his clients in the premises, and that the only way in which said facts could be legally and properly presented to said court was to write the ultimate facts in the premises in a pleading, inform the adverse parties of such pleading by notice so that an issue could be made and tried upon said facts in this honorable court. And respondent says that, acting upon said honest belief, he knew of no other means of legally and properly causing the same to be tried by this honorable court except to file the motion complained of therein, and that he did file said motion for such purpose and for no other purpose, as he might in law and good conscience do and ought to do, as he verily believes.

"8. Respondent expressly disavows and denies any intention on his part at the time of filing the aforesaid document to bring the same before the public of the state of Oklahoma except as a public pleading in a court of record, or to in any wise affect the opinion of the people of the state of Oklahoma as to this honorable court or any of the Justices thereof, or to in any wise affect either the past or future conduct of any of the Justices of this honorable court in said cause or in any other cause.

"9. Respondent therefore pleads that he is not guilty of any contempt. either direct or indirect, or any public offense charged in said information, and tenders his proof thereof."

Respondent thereupon filed a motion to disqualify in this matter each and every member of this court except Justices Hefner, Branson, and Phelps. charging bias and prejudice on the part of all said judges except Justices Harrison and Hunt. and that as to the last two named Justices they should certify their disqualification for the reason the respondent desired to use them as wit-

nesses to establish the truth of charges made in said motion. The motion was denied, and thereupon all Justices of this court save Justices Clark and Riley voluntarily certified their disqualification. Later, by order of this court, the last two named Justices did likewise. Thereupon the Governor of the state of Oklahoma, by authority of law and in the manner provided by law, appointed nine members of the bar of the state—W. E. Utterback, Durant; H. D. Henry, Mangum; Kelly Brown, Muskogee; George Trice, Coalgate; Dan Huett, Enid; W. N. Lewis, Davis; A. R. Swank, Stillwater; J. A. Diffendaffer, Lawton; and A. Scott Thompson, of Miami, Okla.—to hear and determine such charges pending against respondent. These nine appointees took the oath of office and entered upon their duties. Prior to the appointment and qualification of such "special court," the Supreme Court, acting through its regularly elected members thereof, appointed D. H. Linebaugh and G. B. Cochran, members of the bar of this court, to act as counsel for the court in presenting the charges against respondent.

1. The court was met at the threshold with paragraph 1 of the answer of respondent, which was treated as a demurrer and argued at length. Respondent urged, first, that the information herein is defective because contempt of court is a crime and therefore all steps in the prosecution for criminal acts made necessary by the Criminal Code of our state must be followed; second, that the facts charged do not come within the definition of contempt as provided in the statutes of this state, and, there being no common-law contempts in this state, no offense was committed by respondent for which he could be tried or punished by this court.

We do not agree with respondent on either point urged in support of his demurrer. Respondent cites no case holding with his first contention, and we have found none. Proceedings for contempt are generally of two classes—those prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits. The former are criminal and punitive in nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in nature. We therefore have criminal and civil contempts.

A proceeding for criminal contempt is one the object of which is primarily to preserve and maintain the authority of and respect for the courts. It is a summary remedy possessed by courts as an inherent power necessary to their existence as a co-ordinate branch of our government.

"While contempt may be an offense against the law, and subject to appropriate punishment, certain it is that, since the foundation of our government, proceedings to punish such offenses have been regarded as sui generis, and not 'criminal prosecutions' within the 6th Amendment or common understanding."

Warren Myers v. United States, 264 U. S. 95, 68 L. Ed. 577. Also see Bessette v. W. B. Conkey Co., 194 U. S. 324; In re Debs, 158 U. S. 564; Gibson v. Hutchinson, Ann. Cas. 1912B, 1007; McDougal v. Sheridan, (Idaho) 128 Pac. 954; State v. Howell (Conn.) 13 Ann. Cas. 501; People v. Panchire (Ill.) 243 N. E. 476, and cases cited.

In Emery v. State (Okla. Cr.) 232 Pac. 128, the court said:

"In cases of direct contempt under the constitutional and statutory provisions, the contemnor being present in court, neither a formal charge against him in writing nor process is required."

We find no authority opposed to our conclusion in the courts of this state, but many exist in full support thereof.

We cannot accede to the second contention of respondent. The statute of Oklahoma defines contempts of court as follows:

"Contempts of court shall be divided into direct and indirect contempts. Direct contempts shall consist of disorderly or insolent behavior committed during the session of the court and in its immediate view and presence, and of the unlawful and willful refusal of any person to be sworn as a witness, and the refusal to answer any legal or proper question; and any breach of the peace, noise or disturbance so near to it as to interrupt its proceedings, shall be deemed direct contempt of court, and may be summarily punished as hereinafter provided for. Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of court." Section 1697, Compiled Statutes of Oklahoma, 1921.

Respondent admits the preparation and filing of the motion containing the charges against the members of this court, but argues that the filing of a petition for rehearing or a motion for leave to file such petition containing contemptuous matter does not come within the statutory definition of contempts, either direct or indirect. We agree that it

cannot be statutory indirect contempt as defined in the above-quoted statutes. Does it meet the requirement of direct contempt as defined in said statute? We think it does. Respondent filed his motion with the clerk of this court, a part of the court, for the purpose of having it brought before the court in conference for consideration. He followed the only course provided. It was presented to the court in session as intended and initiated by respondent.

In Coons v. State (Ind.) 134 N. E. 197, the court said:

"But the case is different where an officer of the court, be he **attorney,** sheriff, clerk, or juryman, either in writing or orally, files or uses libelous, undignified and scurrilous language—anything which brings the court into disrepute and lowers its dignity, whereby the due administration of justice is hindered and prevented."

An attorney who prepared and filed a petition for a rehearing containing contemptuous language concerning the court was held guilty of contempt committed **"in the face of the court"** in McCormick v. Sheridan (Cal.) 20 Pac. 24.

A petition for a rehearing is not a pleading, but an argument addressed to the court and the individual members thereof; and to incorporate into such argument contemptuous, scandalous, or insulting matter is to commit **"in open court"** an act constituting a contempt on the part of the attorney, according to the holding of the court in Re Wooley, 74 Ky. 95.

But the determination of the question whether the acts charged against respondent constituted direct contempt of court does not necessarily rest on the wording of the statute. Without doubt such acts constituted contempt at the common law. But respondent contends that the common law of contempt does not prevail in this state.

In Hosmer v. State, 24 Okla. Cr. 312, 218 Pac. 164, the court expressly overruled a former decision of the same court agreeing with the contention of respondent herein, and there said:

"After a painstaking consideration of the authorities above cited, we have come to the conclusion that the facts in this case, as stated in the written accusation, did not constitute either a direct or indirect contempt, as defined by our statutes, but that it did state a direct contempt at common law, and that the common law and procedure governs, in so far as not superseded or modified by the Constitution or by statutory enactments authorized by the Constitution."

It is true that in Emery v. State (Okla. Cr.) 232 Pac. 128, the same court did say that contempts in this state were regulated by constitutional or statutory provisions and not by the common law, and held that the case then being considered was "plainly an indirect contempt under the foregoing statutory definitions." The defendant therein was held for writing a letter scurrilous in its nature to the trial judge. With all due respect to that honorable court, we cannot agree that the acts there charged come within the statutory definition of indirect contempt. The act charged could not have been within the statute a "willful disobedience of any process or order lawfully issued or made by the court, resistance willfully offered by any person to the execution of a lawful order or process of a court."

This court, however, does not feel inclined to view the question as an open one in this state, as it agrees with and feels bound by the holding of this court in McKee et al. v. DeGraffenreid et al., 33 Okla. 136, 124 Pac. 303, wherein Justice Williams, speaking for the court, said:

"In this state the common-law rule as to contempts now applies."

2. Assuming, as we have here held, that all necessary steps were taken to bring respondent before the bar of this court to answer for his conduct in filing said motion, and that this court had full power and jurisdiction to try him without the intervention of a jury, there still remains the challenge of the respondent to the legal sufficiency of facts charged.

Counsel for the court contend and urge with much force and persuasion that the charges made against members of this court contained in the motion prepared, signed, and filed by respondent were not material or relevant and proof of the truthfulness of the statements or probable cause for making them would not purge respondent of the contempt; they say time for filing a motion of this character had passed, and under no rule of court or statutory enactment was there right to file and present said motion in said cause. It was agreed at the beginning of the trial of respondent that no writ of mandamus had been issued out of this court and that the cause in which the motion was filed, No. 17409, was a pending cause. Respondent argues that it is proper and permissible practice wherever the court has not lost jurisdiction by issuance of the writ in cases of this character or mandate in appealed cases to call to the attention

of the court in an appropriate motion any apparent error in the decision of the court that any wrong done might be righted.

We are very much inclined to the view of respondent as here stated, but inasmuch as we base our judgment and opinion herein on other grounds, it will not be necessary to so hold. Neither do we say that the grounds stated in the motion, charging members of this court with conduct in the cause amounting to dishonesty of such serious nature as would, if true, be grounds for impeachment and removal from office, may be the basis for any such action. We seriously doubt it. In fact we believe an examination of the authorities would justify the conclusion that the establishment by proof of the charges here made against the court would not excuse the making of same, but would be in mitigation of punishment.

However, the complaint or information filed herein against respondent goes much farther in charging that he, a member of the bar and an officer of this court, prepared and filed such motion in bad faith, as it was "designed, intended, and calculated to hold up to public opprobrium the said court and to incite public contempt for this court and certain of the Justices thereof," etc. The respondent answers that his client, O. O. Owens, informed him that the charges were true and could be proven, and says he believed the statements of his client made to him and relied thereon, in good faith, without any desire or intention to bring disrespect to the court or to intimidate it in the performance of its duties. We therefore hold that the facts stated in the information are sufficient to constitute a charge of direct contempt of court.

In the trial hereof and the taking of testimony neither counsel for the respondent nor counsel for the court indicated an intention to be technical. The court sitting, fully appreciating the peculiar position the members thereof occupied, realizing the seriousness of the charges made against members of the regularly constituted court, fully appreciating the importance of the hearing to respondent, and knowing the interest of the bar and citizens of this state in a full disclosure of the truth, substantially let down the bar of strict rules of evidence in favor of respondent in order that he might have every opportunity to not only establish his own good faith as a practitioner at the bar of court, but to prove the truth of the charges made against members of the court.

Respondent urged at all times that the establishment of good faith on his part in the preparation and filing of the motion would fully excuse his conduct.

During the trial more than 1,000 typewritten pages of testimony were taken, and we have considered it carefully. For the purpose of considering the testimony we are for the moment going to concede that proven good faith on the part of respondent would be in mitigation of punishment. Does the testimony show good faith in respondent's acts? In answering the question we must take into account the fact of respondent's long years of active practice as attorney and his heretofore good reputation as a member of the bar of this court.

Before proceeding to summarize the testimony we should make it plain so all may understand that this court, now sitting, is not, in this cause, called upon to in any sense, degree, or manner express an opinion as to the soundness or unsoundness of any of the opinions or judgments of the various courts in which the Riverside Oil & Refining Company or O. O. Owens was interested and to which reference has hereinbefore been made. Our sole purpose is to determine whether respondent is guilty of contempt as charged, and, if found guilty, to assess punishment.

3. Counsel for respondent contend that he, being a lawyer employed to prepare and file the motion, is excused if he, in good faith, incorporated in the motion statements represented to him by his client, Owens, as being facts and which were material and relevant to obtaining the relief sought. We will proceed to examine the record briefly with a view of testing the good faith of respondent. A number of opinions of the courts were presented holding that an attorney acting in good faith and in the honest belief that his advice is well founded and in the just interest of his client, cannot be held liable for error in judgment. Here again good faith must exist. But whether or not good faith is shown will depend largely upon the facts in any given case. That which might evidence good faith in one would not necessarily be sufficient in another. A lawyer well trained in his profession, as respondent is, with more than 30 years' active practice behind him, is charged with a responsibility much greater and required to exercise more caution before charging the courts with dishonesty and want of integrity than would be required of the less fortunate member of the bar. It is a place where pro-

fessional knowledge and standing are as a two-edged sword. He does and must possess a higher sense of obligation to the court of which he is an officer. Let us consider a few expressions of the courts of the obligations of attorneys.

This court, in State Bar Commission v. Sullivan, 35 Okla. 745, 131 Pac. 703, said:

"The oath which an attorney is required to take before being permitted to practice law in the courts of this state is not simply to be obedient to the Constitution and laws of this state, but to maintain at all times the respect due the courts of justice and judicial officers." Citing Bradley v. Fisher, 80 U. S. (13 Wall.) 335, 20 L. Ed. 646

Mr. Justice Doyle, speaking for the court in Emery v. State (Okla. Cr.) 232 Pac. 128, says:

"We will take this occasion to say that an attorney is under special obligations to be considerate and respectful in his conduct and communication to a court or judge thereof. He is an officer of the court, and it is therefore his duty to uphold and maintain its dignity."

"The acts charged against Judge Monroe would, if true, clearly constitute misuse of his judicial office and misconduct in office. If these charges were false, the conclusion is equally impossible of escape that to have made them was an act of injustice and dishonesty. It is unfair, unethical, and immoral to falsely assail the character or official conduct of any officer. * * * It was also a violation of the attorney's oath, as provided by section 282 of the Code of Civil Procedure, 'to maintain the respect due to the courts of justice and judicial officers'." In re Graves (Cal.) 221 Pac. 411.

Respondent, testifying, repeatedly stated that after he was employed by Owens he carefully examined the records and briefs filed in the litigation hereinbefore mentioned; that Owens detailed to him information upon which he based his charge of facts set forth in the motion. In this detailed statement respondent admits that practically all of the information coming to him from Owens was hearsay, and that Owens gave him the name of his informant in every instance; that many of the alleged informants were prominent citizens and members of the bar of the state with whom respondent had a close acquaintance, and some residing in Tulsa, Okla., the home and place of business of respondent. He further stated that, inasmuch as he had confidence in the integrity and veracity of his client, he did not attempt to verify any of the statements by interview with such informants. It therefore becomes important to weigh the testimony of Owens so that we may judge whether respondent was justified in attacking the court on the uncorroborated word of Owens, for he attempted to give in minute detail the information secured by him and relayed to respondent, where it was used as a basis for charges against members of this court in the motion. Owens attempted to cover the entire subject in his direct testimony, and while his testimony was weakened somewhat by cross-examination, we will take the direct testimony of the witness as a true guide to information furnished respondent.

Owens testified, in substance:

That after the Clark opinion was filed his counsel advised him that everything had been done that could have been done in presenting his case. Judges Stuart and Sharp and Mr. Moss, his counsel, agreed that, inasmuch as Justice Branson had concurred in the opinion written by Justice Harrison and was absent when the later opinion written by Justice Clark was filed, he, Justice Branson, would be interested in seeing the second opinion recalled, and it might be necessary to secure the assistance of R. C. Allen, attorney at law, who had formerly been a law partner of Justice Branson. He called on Mr. Allen and asked him to find out just what was the attitude of Judge Branson before he was to be employed in the case. Justice Branson was then in Chicago. Owens called on Judge Branson in Chicago and sought a political conference with him. The conference was held. Judge Branson told him at the conference that Mr. Allen had been to see him and had left a copy of the opinion written by Justice Clark. Owens then discussed with Judge Branson Republican politics in the state of Oklahoma as related to certain federal judicial appointments: that he, Owens, said Judge Nicholson was unfit to hold any judicial office. Owens further there said J. B. Dudley had used this promise of judicial promotion to induce Judge Nicholson to concur in the opinion written by Clark: that his, Owens', object in seeing Judge Branson was to learn his political ambition, and if Judge Branson intended to be a candidate for the United State Senate. Judge Nicholson could be impeached and the promotion of Judge Branson to the office of Chief Justice would enhance his chances for election to the Senate. Owens then said it was his intention to "bring up" the impeachment of Judge Nicholson, and he would undertake to raise $10,000 to assist in financing the campaign of Judge Branson. In discussing the case

Judge Branson then told him he, Owens, had been robbed and an extension of time to file petition for rehearing should be obtained. Judge Branson then informed him how difficult it was to keep informed on all cases before the court, and detailed how R. C. Allen had in a certain case obtained a rehearing and obtained favorable results for his client.

Neither Judges Stuart nor Sharp nor Mr. Flint Moss was called to corroborate the statement of Mr. Owens. Mr. R. C. Allen was not called. Judge Branson was called by counsel for the court, and outside of confirming Owens' statement of a conversation held between them in Chicago concerning politics, he denied substantially all the statements of Owens in relating the conversation between them concerning the litigation. Judge Branson admitted R. C. Allen came to see him, but denied that the "Riverside" opinion was mentioned or discussed, and asserted he, Allen, left no copy of the opinion with him, and further asserted that in his conversation with Owens he, Judge Branson, never mentioned the name of R. C. Allen, It should be noted here that Owens, according to his version, went to Chicago to interest Judge Branson in his case, but first proposed a political conference and suggested the impeachment of Judge Nicholson as a means of advancing Judge Branson politically.

Mr. Owens further says that on this same trip he met W. A. Ledbetter at Battle Creek, Mich., and there submitted to him a copy of the Clark opinion, and then and there Judge Ledbetter told him he, Owens, had been a victim of a Republican frame-up—a conspiracy; that J. B. Dudley was very active in Republican politics, and as Chief Justice Nicholson was a Republican, his aspirations were responsible for his change of attitude in favor of the Clark opinion. Judge Ledbetter then said (so Owens stated) that, in support of his suspicion and statement, his law partner, Mr. Bell, had told him that J. B. Dudley, counsel of record, had told Bell that he. Dudley, had gone and talked to Chief Justice Nicholson about this matter and asked him, Nicholson, to give it his personal attention.

Judge Ledbetter was not called to the witness chair by respondent to confirm this conversation. but counsel for the court did produce him and he denied having a conversation with Owens wherein he, Ledbetter, made any such statements or insinuations. He denied even mentioning a frame-up, political

or otherwise, and explained that the statement repeated to him by Mr. Bell had to do with an opinion before one of the Commissions, and he so told Owens.

Owens further said: That Justice Hunt told him that the opinion in the mandamus case, known as the Mason opinion, when presented in conference, was in longhand and was read by Justice Mason; that Justice Branson was absent; that four Justices present concurred in the opinion, but Justices Harrison and Hunt dissented; that after the opinion was finalized or typed in final form, Justice Mason asked Justice Hunt to forego his dissent, and Judge Mason then remarked that he, Mason, believed that the dissent of Judges Harrison and Hunt was because he, Mason, did not concur in the Clark opinion; that he, Hunt, said he had urged Justice Riley to study the records and briefs in the case wherein Justice Clark wrote the opinion; that he felt Justice Riley was allowing himself to be imposed on by voting for the opinion without informing himself; that Hunt further said. J. B. Dudley, one of the attorneys in the case, had been around the Capitol and in conference with Judge Nicholson, and that Dudley "had his arm around Judge Nicholson's neck."

Owens' informant, Justice Hunt, was not called to the witness chair by respondent to give direct testimony of the alleged irregularities of the court nor to confirm the statements of Owens. Justice Hunt was called by counsel for the court and denied in substance and detail the truth of the statements of Owens concerning conversations with him as related herein.

Owens further said Miss Jackson, former law clerk in Justice Mason's office, visited his home in Tulsa with other friends and told him Judge Lydick wrote the mandamus opinion. Miss Jackson when called as a witness denied that she had ever made such a statement to anyone. The other parties present were not called as witnesses.

Owens further said he employed Mr. George Schwabe, a Tulsa lawyer, to interview Justice Mason with a view of finding out whether Justice Mason concurred in the Clark opinion. Schwabe reported to him that Justice Mason said he did not concur in the Clark opinion, but for the sake of harmony he did not object to having his name appear thereon.

His informant, Mr. Schwabe. was not called by respondent to give testimony or to corroborate Owens. Counsel for the court called

Mr. Schwabe and he admitted the employment and the making of the trip to interview Justice Mason. He said he reported to Owens that there was nothing wrong or irregular in the matter in question and denied he told Owens that which Owens testified he did.

Owens testified that Judge Walker of Tulsa informed him that he, Walker, had interviewed at least three of the Justices of the Supreme Court and they had agreed that in their opinion Justice Mason had not written the opinion in the mandamus case. Judge Walker did not appear in open court as a witness, although subpoenaed. This court recessed in order that his deposition might be taken. An examination of his whole testimony would not justify such a conclusion. He goes no further than to say he got the impression that the Justices believed Justice Mason did not write the opinion, but he could not quote the words or substance thereof spoken by either Justice.

Owens further said he employed two detectives for five or six weeks during the summer of 1926 to investigate the conduct of a member of this court and advised respondent of such fact.

Owens' testimony covers nearly 200 typewritten pages. but the foregoing, in our judgment, fairly presents the information detailed by him to respondent that is material here. It is true, however, that Owens on many occasions went far afield in his testimony to launch personal attacks on members of the court concerning matters not involved or material here, and at all times the basis was either hearsay or mere rumor, and respondent was advised of such rumors by Owens.

In August, 1925, a special meeting of the stockholders of the Riverside Oil and Refining Company was held, at which time Owens made a report on the affairs of the company and the status of this litigation. The minutes of this meeting was published in book form and labeled "Done in Oil." It contains 250 closely printed pages in fine print and was given circulation. The two opinions, one written by Justice Harrison and one by Justice Clark, are printed in full. The comment by Owens in this meeting. given publication in this book, is sarcastic and disrespectful toward members of the court deciding against him, and this was also brought to the attention of respondent by Owens.

The length of this opinion already forbids any further discussion of the evidence ex-cept briefly to touch on the salient points necessary to a conclusion to be reached herein.

Respondent in his own behalf testified. The record of his testimony covers more than 200 pages. In the main it is a repetition of the statements of Owens as having been the source of information furnished him by his client. He detailed the status of the numerous lawsuits then pending in behalf of Owens and in which he was counsel, seeking relief from the judgment in cause 13646 in this court. He asserted that there was no question in his mind but that any court of general equity powers obtaining jurisdiction of the parties could and would relieve Owens from the effect of said judgment on account of the fraud of the court as charged in the motion. Before preparing the motion he was conversant with Owens' published attack in the Tulsa Word on the integrity of the Supreme Court of Oklahoma in his canvass for election as a member of the Legislature. He had read a copy of "Done in Oil." He knew detectives employed by Owens were investigating acts of individual members of the court. He had in June, 1926, prepared and filed the suit in the name of Owens in the district court of Tulsa county, Okla., against lawyers. referee, district judges, and Supreme Court Justices, charging them with a conspiracy to defraud him in cause 13646. He said he did not feel it any duty of his as a member of the bar and an officer of this court to make any further investigation than the word of his client and the reading of the record and briefs before he formally charged members of this court with fraud in the performance of their official duties. We regret that respondent also allowed himself to give emphasis to the rumors and hearsay statements made by Owens concerning personal conduct of members of this court.

The above resume is, in our judgment, a fair presentation of the material testimony offered in behalf of respondent. He made no offer of competent evidence to establish the charges of official misconduct of any of the Justices of this court.

Counsel for the court went directly into the merit of the charges of fraud on the part of members of this court participating in the decision as set forth in the motion, the filing of which gave rise to this proceeding. No point was made by them that the records of the court may not be impeached in this manner nor that no evidence had been submitted even tending to

impeach them. The court sitting made no ruling to such effect, believing that the whole truth in this matter under all the circumstances would be wholesome.

Referee Halley, former Justices Gordon, Warren, Dudley, McNeill, Nicholson, and Justices Branson, Hunt, Clark, Riley, Lester, Phelps, and Mason took the witness chair and in detail conclusively established the lack of any legal foundation or justification for the charges prepared and filed by respondent accusing the members of this court with misconduct as set forth in said motion.

We take this occasion to say that the present members of the court trying this cause, coming from the active practice of law, entered upon their duties herein with a feeling of embarrassment and a full realization of the delicate but fixed responsibility imposed on them. The Supreme Court of our state was under serious cloud, charges of dishonesty in office were being leveled at members thereof in a formal and verified motion prepared, signed, and filed by an able and prominent member of the bar of this state. It was the subject of general comment among lawyers, citizens, and the press of the state. There was a feeling of uneasiness present with all citizens who appreciated that full respect for the honor and integrity of our highest court and the personnel thereof was essential to good government. Also an able lawyer was before the bar of the court who was entitled to every opportunity to clear his name from the charge of willfully and unnecessarily inciting public contempt for this court. Fully realizing the gravity of the situation, we imposed no rigid rule on the admissibility of evidence, but extended almost unlimited privilege to respondent to make good his plea of good faith in the presentation of said motion. We went far in permitting insinuations, innuendoes, rumors, and hearsay, even as to matters not entirely germane to the issue, with a view of awarding an opportunity to be fully heard. After considering all of the evidence admitted, it is our firm and fixed opinion, and the judgment of this court upon the evidence, that no part of the allegations made in said motion, imputing dishonesty or misconduct in office of any of the Justices of this court affecting the rights of the client of respondent, are true.

What of the good faith of respondent? We have seen how he failed to investigate these charges brought to him by his client, although the informants were in most instances lawyer acquaintances and living in his own home city. He says he felt no obligation to investigate even though the integrity of our highest court was involved. He recognizes no special obligation to the court as an officer thereof or as a member of the bar, as we have seen, the courts of this land have declared to exist. He has made similar charges in pleadings filed in several suits in the courts of the state, and no proof has been made thereon. He says a court of general equity powers could grant his client relief desired. He makes no attempt at proof here. He was familiar with the vindictive charges made by his client in "Done in Oil," in prepared newspaper articles, and pleadings filed. He knew Owens was conducting an investigation through hired detectives. He knew Owens was attempting to have various lawyers "sound" individual Justices of this court on the inner workings of the court on his case. He knew, or should have known, that his client by such conduct was at least unfriendly to the court. He knew it was as highly improper for litigant or attorney to seek by direct or other means communication with a judge concerning the merits of pending litigation as it was for the judge to permit same except in the manner provided by statute and the rules of the court. With all this knowledge, he accepted the word of his client and permitted many months after rendition of the opinion to elapse before filing this motion. The motion was filed January 3, 1927, the same day the Legislature convened with Owens, a new member pledged to investigate the court, in attendance.

In People v. Green (Colo.) 13 Pac. 514, the court said:

"We think he proceeded without that caution and circumspection which the gravity of the charges demanded; and that his conduct, especially in connection with the answer filed in this court, is highly censurable. Before signing his name to the bill or to the answer, he should have made a much more careful and thorough investigation as to the truthfulness of the averments."

However, to our minds the strongest evidence of lack of good faith is presented in the briefs offered by respondent through his counsel. After the evidence was taken, counsel, during a recess of more than one month, presented to us printed briefs on each side. We do not see how counsel as able as those representing respondent could, after the testimony was heard, entertain a thought that the charges were established by evidence.

Yet the briefs, wholly disregarding the overwhelming rejection by evidence of the claims set forth in the motion, fail to contain a word of regret or apology for the assault on the integrity of the Justices having concurred in an opinion against Owens. On the other hand, the briefs, in part, in intemperate if not wholly offensive language, continue the assault and include as objects thereof other Justices not complained against in the motion. Their main brief from pages 38 to 48, inclusive, is a resume of the evidence reiterating the truth of Owens' story, although they had heard witness after witness, from whom Owens had claimed to have received information, repudiate Owens' testimony. Attacks are here made on former Justice McNeill and Justices Branson and Hunt, who up to the hour of trial had been free from assault. A sample of the language may be found in the discussion of "Justice Branson" at page 97 of the brief. It is:

"We have but to return to the philosophy which is the basis of the rule which looks to the demeanor of a witness to determine his conscience, and that philosophy is, suspicion always haunts the guilty mind, and trembling under the stings of conscience, pours forth invective against its successful adversary. Such was the character of Mr. Chief Justice Branson as reflected by his demeanor on the witness stand."

The respondent permitted all this to be done in his behalf. A quotation from United States v. Green, 85 Fed. 857, expresses the law as we see it in this language:

"When respondent is called upon to show cause why he should not be disbarred for the offense charged against him, he files a voluminous answer wherein he affirms all that is said in the briefs, and at the hearing delivered an oral argument, wherein he excelled himself in bitterness of invective against the judges referred to. The respondent is not on trial for the language in his answer nor for what was said orally, and these matters are only referred to for the purpose of showing that respondent stands not only unrepentant, but glories in the assumed character of defender of the rights of the bar and of free speech. It often happens that a lawyer, when exhausting his last remedy in the bitterness of defeat, will use language with reference to a judge that on sober reflection he would apologize for quickly: but it has seldom, if ever, happened that a lawyer will, in a cool and deliberate manner, compose and write a libel on a judge, and forever after affirm its truth, with no evidence to support his assertion."

Taking into consideration all of the circumstances, evidence herein, and conduct

of respondent, this court is of the opinion, and it is its finding and judgment, that respondent was not proceeding in good faith as an attorney in the preparation, signing, and filing this motion, and that he is guilty of contempt of court as charged in the information filed herein. We cannot believe that an attorney as learned in the law and the ethics of the profession as respondent would have in good faith filed said motion under all the circumstances known to him.

Further, we think the court did the proper thing in issuing the rule to show cause herein. If this court does not defend and protect itself from slanderous charges of the character contained in this motion, the individual judges would deserve and should promptly receive the contempt of all intelligent and honorable men; for the court which is too weak to demand and enforce decent and respectful treatment cannot expect to secure or retain the respect and confidence of the people.

We are of the opinion that the respondent should be punished, and the evidence would justify this court in imposing a severe sentence. But the court should be extremely careful not to inflict a penalty which can carry with it the least inference of the arbitrary exercise of its power, or that might seem disproportionate to the offense committed. The offense is a serious one, but in view of the fact that this is the first time respondent has been before the bar of this court in a proceeding of this character, the penalty will not be as severe as it might otherwise be. The respondent has stood high in his profession. We are informed he occupies a like position in society and as a citizen. This being true, the entering of this formal judgment against him on the permanent records of this court will be more punishment to him than any other form that this court would feel like assessing. It should be a lesson for all time to any lawyer who forgets his obligation to society to uphold and maintain the dignity of our courts.

It is the judgment of this court that the respondent be fined the sum of $1.000, without costs incurred herein, to be paid by him to the clerk of this court within six hours hereafter; that he now is remanded to the custody of the marshal of this court to be by him held until such fine is paid. In the event such sum of money is not paid within said time, the respondent shall be by the marshal delivered to the sheriff of

Oklahoma county, Okla., where he shall be confined in the county jail of said county until said fine is paid, and that commitment be issued in accordance herewith.

Justices concurring: UTTERBACK, HENRY, TRICE, BROWN, SWANK, DIFFEN-DAFFER, LEWIS, and HUETT. Justices HENRY and HUETT are of the opinion the fine is excessive.

Note.—See under (1) 13 C. J. p. 58, §81. (2) 13 C. J. p. 65, §89. (3) 13 C. J. p. 77, §112. (4) 13 C. J. p. 32, §42. (5, 6, 7) 13 C. J. p. 77, §112.